[No. F063712. Fifth Dist. Jan. 29, 2013.]

THE PEOPLE, Plaintiff and Respondent, v.
RICARDO ALEJANDRO YEARWOOD, Defendant and Appellant.

**COUNSEL**

Carol Foster, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Michael P. Farrell, Assistant Attorney General, and Michael A. Canzoneri, Deputy Attorney General, for Plaintiff and Respondent.

**OPINION**

**LEVY, J.—**

## INTRODUCTION

During the autumn of 2011, appellant Ricardo Alejandro Yearwood was convicted of one count of unlawfully possessing marijuana in prison and sentenced as a third strike offender to 25 years to life imprisonment plus one year. (Pen. Code, § 4573.6.)[1] This crime is not a serious felony within the meaning of section 1192.7, subdivision (c), or a violent felony within the meaning of section 667.5, subdivision (c). Two prior strike allegations and one prior prison term allegation were sustained. (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–(c), 667.5, subd. (b).)

On November 6, 2012, the voters approved Proposition 36, the Three Strikes Reform Act of 2012, which amended sections 667 and 1170.12 and added section 1170.126 (hereafter the Act). The Act changes the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment. Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence. The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor. In all other cases, the recidivist will be sentenced as

[1] Unless otherwise specified all statutory references are to the Penal Code.

a second strike offender. (§§ 667, 1170.12.) The Act also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.126.)

It is undisputed that if appellant had been sentenced for the marijuana possession conviction after the effective date of the Act, an indeterminate life sentence would not have been imposed. Appellant argues he is entitled to resentencing under amended sections 667 and 1170.12. Respondent argues that appellant's remedy is limited to filing a petition for a recall of his sentence in compliance with section 1170.126. Appellant rejects this remedy because he does not want to bear the risk that the trial court could find that he poses an unreasonable public safety risk and decline to reduce his sentence. Such a discretionary finding is a component of section 1170.126 but not sections 667 and 1170.12, as amended.

Resolution of this issue requires us to decide if the amendments to sections 667 and 1170.12 apply retroactively to prisoners who were sentenced prior to the Act's effective date but whose judgments were not final as of that date. We conclude that the common law doctrine embraced by the California Supreme Court in *In re Estrada* (1965) 63 Cal.2d 740 [48 Cal.Rptr. 172, 408 P.2d 948] *(Estrada)* does not apply because section 1170.126 operates as the functional equivalent of a saving clause. The voters intended for the amendments to sections 667 and 1170.12 to operate prospectively only. Section 1170.126 is not ambiguous. It applies to prisoners, like appellant, whose judgments were not final on the Act's effective date. Failure to accord retroactive effect to amended sections 667 and 1170.12 does not violate appellant's constitutional equal protection rights. The judgment will be affirmed.

It is important to recognize that prospective-only application of the amendments to sections 667 and 1170.12 does not withhold from appellant a reduction in punishment. When the judgment is final, he can file a petition for a recall of his sentence in compliance with section 1170.126. Absent a finding by the trial court that appellant poses an unreasonable risk of danger to public safety, he will receive the same sentencing reduction that he would have obtained if had been resentenced under amended sections 667 and 1170.12. Prospective-only application of amended sections 667 and 1170.12 serves a valid purpose. Requiring all prisoners who were sentenced before the Act's effective date to comply with section 1170.126 provides the trial court with a limited capacity to protect the public in specific cases where reduction of a prisoner's sentence would create an unreasonable safety risk.

## FACTS

On February 3, 2011, appellant was an inmate at Kern Valley State Prison.[2] He and another inmate began fighting with a third inmate. Correctional staff ordered the inmates to lie down on the ground. Appellant ran approximately 10 yards before lying on the ground. A correctional officer observed appellant throw an object five to seven feet in front of him. The object was photographed and collected. It was a bindle containing three packages of marijuana. The marijuana had an aggregate weight of 3.16 grams.

On July 8, 2011, an information was filed charging appellant with one count of unauthorized possession of marijuana in prison (count 1). (§ 4573.6.) It was specially alleged that appellant had suffered two prior strike convictions and served two prior prison terms. (§§ 667, subds. (c)–(j), 1170.12, subds. (a)–(e), 667.5, subd. (b).) The prior strikes resulted from convictions for robbery and assault with a semiautomatic firearm on a peace officer. (§§ 211, 245, subd. (d)(2).)

Appellant pled not guilty and denied all the special allegations.

A bifurcated jury trial was held in September of 2011. Appellant was found guilty of count 1; the jury sustained both of the strike priors and one of the prison priors.

On October 24, 2011, the court denied probation and imposed a sentence of 25 years to life plus one year to be served consecutive to the sentence imposed for Los Angeles County Superior Court case No. BK5743896.

Appellant filed a timely notice of appeal on October 25, 2011.

## DISCUSSION

I. *The Amendments to Sections 667 and 1170.12 Do Not Operate Retroactively.*

    A. *Changes to the three strikes law.*

■ The Act was approved by the electorate on November 6, 2012, and became effective the next day. It substantially changed the way habitual offenders with two or more prior strikes are sentenced after conviction of

---

[2] He was serving a 16-year term of imprisonment that was imposed for a robbery conviction with an arming enhancement and one prior strike. (§§ 211, 12022, subd. (a)(1), 667, subds. (a), (e).)

another felony. The Act amended sections 667, subdivision (e)(2)(A) and 1170.12, subdivision (c)(2)(A) to provide that "[e]xcept as provided in subparagraph (C)," a person with two or more prior strikes must be sentenced to an indeterminate term of 25 years to life imprisonment. Subdivision (e)(2)(C) of section 667 and subdivision (c)(2)(C) of section 1170.12 together provide that if the offender has two or more prior strikes, but the new felony is not a serious or violent felony as defined in subdivision (d) of section 667 and subdivision (b) of section 1170.12, the defendant must be sentenced as a second strike offender under subdivision (e)(1) of section 667 or subdivision (c)(1) of section 1170.12, irrespective of the number of prior strike convictions. Sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C) contain four exceptions to the new restriction on imposition of a third strike sentence. Three exceptions relate to the nature of the current felony and one exception relates to the nature of the offender's prior felony convictions. If the prosecution pleads and proves one of the four exceptions, the offender will be sentenced as a third strike offender.

■ The Act also added section 1170.126 which creates a postconviction release proceeding "intended to apply exclusively to persons presently serving an indeterminate term of imprisonment pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12, whose sentence under this act would not have been an indeterminate life sentence." (§ 1170.126, subd. (a).) A prisoner is eligible for resentencing as a second strike offender if all of the following are shown: (1) the prisoner is serving an indeterminate life sentence for a crime that is not a serious or violent felony; (2) the life sentence was not imposed for any of the offenses appearing in sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C); and (3) the inmate has no prior convictions for any of the offenses appearing in clause (iv) of section 667, subdivision (e)(2)(C) or clause (iv) of section 1170.12, subdivision (c)(2)(C). (§ 1170.126, subd. (e).)

■ To obtain a sentencing reduction pursuant to section 1170.126, the prisoner must file a petition for a recall of sentence in the trial court. "Any person serving an indeterminate term of life imprisonment imposed pursuant to" the three strikes law may file a petition for a recall of his or her sentence within two years after the Act's effective date "or at a later date upon a showing of good cause." (§ 1170.126, subd. (b); hereafter 1170.126(b).) Upon receipt of such a petition, the trial court must determine if it satisfies the criteria contained in subdivision (e) of section 1170.126. (§ 1170.126, subd. (f).) If it does, the prisoner shall be resentenced as a second strike offender "unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) In exercising this discretion the trial court may

consider the prisoner's criminal history, disciplinary record and record of rehabilitation while incarcerated and any other relevant evidence. (§ 1170.126, subd. (g).)

### B. *Arguments contained in the voter information guide.*

■ The Act was added by the initiative process. Ballot pamphlet arguments have been recognized as a proper extrinsic aid in construing voter initiatives adopted by popular vote. (*People v. Floyd* (2003) 31 Cal.4th 179, 187–188 [1 Cal.Rptr.3d 885, 72 P.3d 820] (*Floyd*); *Davis v. City of Berkeley* (1990) 51 Cal.3d 227, 237, fn. 4 [272 Cal.Rptr. 139, 794 P.2d 897]; *Citizens Assn. of Sunset Beach v. Orange County Local Agency Formation Com.* (2012) 209 Cal.App.4th 1182, 1189 [147 Cal.Rptr.3d 696] (*Sunset Beach*).) The Act's proponents advanced six arguments in favor of the Act in the Voter Information Guide. The argument headings were titled: (1) "make the punishment fit the crime"; (2) "save California over $100 million every year"; (3) "make room in prison for dangerous felons"; (4) "law enforcement support"; (5) "taxpayer support"; and (6) "tough and smart on crime." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) argument in favor of Prop. 36, p. 52, capitalization omitted.) The ballot arguments supporting Proposition 36 were primarily focused on increasing public safety and saving money. The public safety argument reasoned, "Today, dangerous criminals are being released early from prison because jails are overcrowded with nonviolent offenders who pose no risk to the public. Prop. 36 prevents dangerous criminals from being released early. People convicted of shoplifting a pair of socks, stealing bread or baby formula don't deserve life sentences." (Voter Information Guide, Gen. Elec., *supra*, rebuttal to argument against Prop. 36, p. 53.) Also, "Prop. 36 will help stop clogging overcrowded prisons with non-violent offenders, so we have room to keep violent felons off the streets" and "Prop. 36 will keep dangerous criminals off the streets." (Voter Information Guide, Gen. Elec., *supra*, argument in favor of Prop. 36, p. 52.) The Act's proponents stated that "Criminal justice experts and law enforcement leaders carefully crafted Prop. 36 so that truly dangerous criminals will receive no benefits whatsoever from the reform." (*Ibid.*) The fiscal argument reasoned that the Act could save taxpayers "$100 million every year" that would otherwise be spent "to house and pay health care costs for non-violent Three Strikes inmates if the law is not changed." (*Ibid.*)

### C. *The* Estrada *rule is inapplicable.*

■ "[A] judgment is not final so long as the courts may provide a remedy on direct review. That includes the time within which to petition to the United States Supreme Court for writ of certiorari." (*In re Pine* (1977) 66 Cal.App.3d 593, 594 [136 Cal.Rptr. 718].) "Cases in which judgment is not yet final

include those in which a conviction has been entered and sentence imposed but an appeal is pending when the amendment becomes effective." (*In re N.D.* (2008) 167 Cal.App.4th 885, 891 [84 Cal.Rptr.3d 517].)

■ Since this appeal centers on statutory interpretation, "our task is ascertaining the intent of the voters," which " 'is the paramount consideration.' " (*Sunset Beach, supra,* 209 Cal.App.4th at p. 1189.) The Act does not contain a saving clause or refer to retroactivity. It does not contain a provision explicitly referring to persons, like appellant, who were convicted of a felony and sentenced to an indeterminate life term as a third strike offender prior to the Act's effective date but whose judgments are not final because direct appellate review is pending.

■ Appellant raises several arguments involving statutory interpretation of the Act that he asserts compel retroactive application of sections 667 and 1170.12. He contends that the amendments to sections 667 and 1170.12 must be given retroactive application under the *Estrada* rule. He also argues that the phrase "[a]ny person serving an indeterminate term of life imprisonment" in section 1170.126(b) is ambiguous because it is unclear if it includes prisoners whose convictions are not final. Consequently, the rule of lenity applies to restrict application of section 1170.126 only to prisoners whose judgments were final on the Act's effective date. He further contends that subdivision (k) of section 1170.126 (hereafter section 1170.126(k)) guarantees him resentencing. None of these arguments is convincing. As will be explained, appellant errs by separating the Act into two isolated statutory parts and analyzing each statute independent of the larger context. We must "consider portions of a statute in the context of the entire statute and the statutory scheme of which it is a part, giving significance to every word, phrase, sentence, and part of an act in pursuance of the legislative purpose." (*Curle v. Superior Court* (2001) 24 Cal.4th 1057, 1063 [103 Cal.Rptr.2d 751, 16 P.3d 166].)

■ The *Estrada* rule does not apply to the Act because section 1170.126 operates as the functional equivalent of a saving clause. Section 1170.126 is not ambiguous. The voters intended a petition for recall of sentence to be the sole remedy available under the Act for prisoners who were serving an indeterminate life sentence imposed under the former three strikes law on the Act's effective date without regard to the finality of the judgment.

In *Estrada, supra,* 63 Cal.2d 740, the petitioner escaped from the California Rehabilitation Center in June of 1963. "In September of that year, statutory amendments became effective under which the minimum preparole sentence for a nonviolent escape was reduced. In October, Estrada was convicted of escape. After he was captured and returned and the addiction

proceedings terminated, the Adult Authority continued to hold him pursuant to the former law on escapes. [Citation.] In a habeas corpus proceeding, the Supreme Court ordered Estrada's sentence for escape to be fixed as provided in the amended statutes." (*In re N.D., supra,* 167 Cal.App.4th at p. 890.) The *Estrada* court reasoned: "When the Legislature amends a statute so as to lessen the punishment it has obviously expressly determined that its former penalty was too severe and that a lighter punishment is proper as punishment for the commission of the prohibited act. It is an inevitable inference that the Legislature must have intended that the new statute imposing the new lighter penalty now deemed to be sufficient should apply to every case to which it constitutionally could apply. The amendatory act imposing the lighter punishment can be applied constitutionally to acts committed before its passage provided the judgment convicting the defendant of the act is not final." (*Estrada, supra,* 63 Cal.2d at p. 745.)

The *Estrada* court held: "[W]here the amendatory statute mitigates punishment and there is no saving clause, . . . the amendment will operate retroactively so that the lighter punishment is imposed" in all cases in which the judgment was not yet final when the amendment took effect. (*Estrada, supra,* 63 Cal.2d at p. 748; see *In re N.D., supra,* 167 Cal.App.4th at p. 891.)

Reviewing courts have departed from the *Estrada* standard "only when new legislation has included an express saving clause or its equivalent or when some other consideration clearly dictated a contrary result." (*In re Pedro T.* (1994) 8 Cal.4th 1041, 1055 [36 Cal.Rptr.2d 74, 884 P.2d 1022], fn. omitted (dis. opn. of Arabian, J.) (*Pedro T.*); see *People v. Nasalga* (1996) 12 Cal.4th 784, 793 [50 Cal.Rptr.2d 88, 910 P.2d 1380].) Yet, the Legislature is not "always bound to use the same method, or to enact an explicit saving clause . . . ." (*Pedro T., supra,* 8 Cal.4th at p. 1048.) Courts cannot "dictate to legislative drafters the forms in which laws must be written to express the legislative intent. Rather, what *is* required is that the Legislature demonstrate its intention with sufficient clarity that a reviewing court can discern and effectuate it." (*Id.* at pp. 1048–1049, fn. omitted.)

The *Estrada* rule is considered to be "well settled" and courts have "consistently implemented its principles in a multiplicity of circumstances." (*Pedro T., supra,* 8 Cal.4th at p. 1054 (dis. opn. of Arabian, J.), fns. omitted.) These circumstances include initiatives approved by the voters. (See, e.g., *Floyd, supra,* 31 Cal.4th at p. 182.) "The Legislature has also accepted the rule of *Estrada,* never statutorily altering the governing principles while continuing to conform to its procedural mandate to confirm the intention to preclude retroactive application of mitigating changes." (*Pedro T., supra,* 8 Cal.4th at p. 1055 (dis. opn. of Arabian, J.).) ". . . *Estrada* is today properly understood, not as weakening or modifying the default rule of

prospective operation codified in section 3, but rather as informing the rule's application in a specific context by articulating the reasonable presumption that a legislative act mitigating the punishment for a particular criminal offense is intended to apply to all nonfinal judgments." (*People v. Brown* (2012) 54 Cal.4th 314, 324 [142 Cal.Rptr.3d 824, 278 P.3d 1182] (*Brown*).)

The *Estrada* rule has been found inapplicable in a variety of contexts. In *Floyd, supra,* 31 Cal.4th 179, the Supreme Court considered an express saving clause[3] that was included in an initiative creating an alternative sentencing scheme for nonviolent drug offenses. It held that the *Estrada* rule did not apply and prospective-only application of the initiative did not infringe the defendant's state and federal constitutional equal protection rights. (*Floyd,* at p. 182.) In *People v. Cruz* (2012) 207 Cal.App.4th 664, 668 [143 Cal.Rptr.3d 742], this court reached the same conclusions with respect to the 2011 sentencing realignment legislation, which contained a similar express saving clause.

Courts have departed from the *Estrada* rule in several cases where the legislation did not include an express saving clause. Most recently, in *Brown, supra,* 54 Cal.4th 314, the Supreme Court held that the *Estrada* rule did not require retroactive application of "a statute increasing the rate at which prisoners may earn credit for good behavior . . . ." (*Id.* at p. 325.) It reasoned that this statute "does not represent a judgment about the needs of the criminal law with respect to a particular criminal offense, and thus does not support an analogous inference of retroactive intent. . . . Instead of addressing punishment for past criminal conduct, the statute addresses *future conduct* in a custodial setting by providing increased incentives for good behavior." (*Ibid.*) In *Pedro T., supra,* 8 Cal.4th at pages 1044 to 1049, the Supreme Court determined that the *Estrada* rule did not apply to a statute temporarily increasing the penalty for auto theft. *People v. McNeely* (1994) 28 Cal.App.4th 739 [33 Cal.Rptr.2d 582] concluded that amendment of section 12022.6 "to make the enhancement applicable to $50,000 rather than $25,000 in losses" did not apply retroactively because the Legislature amended the statute to account for inflation and not to decrease punishment. (*McNeely, supra,* at p. 744.) In *In re N.D., supra,* 167 Cal.App.4th 885, this court held that amendments to Welfare and Institutions Code sections 731 and 733 that took effect in 2007 did not apply retroactively because "[t]he amendments did not *mitigate* punishment, but only limited the places in which a ward can be confined." (*In re N.D., supra,* at p. 888.)

---

[3] The saving clause stated "that '[e]xcept as otherwise provided, the provisions of this act shall become effective July 1, 2001, and its provisions shall be applied prospectively' [citation] . . . ." (*Floyd, supra,* 31 Cal.4th at p. 182.)

In our view, this case presents an additional circumstance where the *Estrada* rule does not apply. When the language of an initiative is construed "we consider not only the ordinary meaning of the bare words, but *how those words fit into the initiative as a whole.*" (*Sunset Beach, supra,* 209 Cal.App.4th at p. 1189, italics added.) In deciding if the *Estrada* rule compels retroactive application of amended sections 667 and 1170.12, those sections must be examined within the context of the entire Act. Appellant's argument erroneously considers amended sections 667 and 1170.12 in isolation.

The postconviction release proceeding crafted in section 1170.126 operates as the functional equivalent of a saving clause. In part, section 1170.126(b) provides that "[a]ny person serving an indeterminate term of life imprisonment" imposed for a third strike conviction "may file a petition for a recall of sentence."[4] The quoted phrase is not ambiguous. Section 1170.126(b) could have been, but was not, drafted so that it applied only to prisoners whose judgments were final before the Act's effective date. We believe that section 1170.126(b) is correctly interpreted to apply to all prisoners serving an indeterminate life sentence imposed under the former three strikes law. The finality of the judgment is not determinative for purposes of section 1170.126(b).

This interpretation of section 1170.126(b) is consistent with the voters' intent in approving the Act as evidenced by the ballot arguments, which are reliable indicia of voter intent. (*Floyd, supra,* 31 Cal.4th at pp. 187–188.) Enhancing public safety was a key purpose of the Act. The Act's proponents argued that the initiative would ensure dangerous criminals remain in prison. One of the arguments in the ballot pamphlet in opposition to the Act referenced the postconviction release process created by section 1170.126. It asserted that "[a] hidden provision . . . will allow thousands of dangerous criminals to get their prison sentence reduced and then released from prison early." (Voter Information Guide, Gen. Elec., *supra,* rebuttal to argument in favor of Prop. 36, p. 52, capitalization omitted.) In rebuttal, proponents denounced this argument as a "scare tactic." (Voter Information Guide, Gen. Elec., *supra,* rebuttal to argument against Prop. 36, p. 53.) Proponents insisted that the Act "requires that murderers, rapists, child molesters, and

---

[4] Section 1170.126(b) provides as follows: "Any person serving an indeterminate term of life imprisonment imposed pursuant to paragraph (2) of subdivision (e) of Section 667 or paragraph (2) of subdivision (c) of Section 1170.12 upon conviction, whether by trial or plea, of a felony or felonies that are not defined as serious and/or violent felonies by subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7, may file a petition for a recall of sentence, within two years after the effective date of the act that added this section or at a later date upon a showing of good cause, before the trial court that entered the judgment of conviction in his or her case, to request resentencing in accordance with the provisions of subdivision (e) of Section 667, and subdivision (c) of Section 1170.12, as those statutes have been amended by the act that added this section."

other dangerous criminals serve their full sentences," and it "prevents dangerous criminals from being released early." (*Ibid.*, italics omitted.)

Giving amended sections 667 and 1170.12 prospective-only application supports the Act's public safety purpose by reducing the likelihood that prisoners who are currently dangerous will be released from prison due to the Act. During the pretrial, trial and sentencing phases of the criminal justice system, various discretionary decisions are available to the prosecutor and the trial court that can result in a shorter or longer term of imprisonment (e.g., selection of the appropriate base term, concurrent or consecutive sentencing, dismissal of a strike in the interests of justice). Once the defendant is sentenced, prosecutorial and judicial discretion are effectively exhausted. Amended sections 667 and 1170.12 do not provide the trial court with any discretion to impose a third strike sentence based on a finding of current dangerousness. In contrast, section 1170.126 entrusts the trial court with discretion that may be exercised to protect the public. A court may deny a section 1170.126 petition if, after examination of the prisoner's criminal history, disciplinary record while incarcerated, and any other relevant evidence, it determines that the prisoner poses "an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)

If amended sections 667 and 1170.12 are given retroactive application, prisoners in appellant's procedural posture would be entitled to automatic resentencing as second strike offenders without any judicial review to ensure they do not currently pose an unreasonable risk of danger to public safety. The time period between sentencing and finality of the judgment can span years. Prisoners can substantially increase in dangerousness during this interval. An increase in dangerousness will not always be reflected in new criminal convictions. Also, prisoners could have been dangerous when the life sentences were imposed and remained unreasonable safety risks. It would be inconsistent with the public safety purpose of the Act to create a loophole whereby prisoners who were sentenced years before the Act's effective date are now entitled to automatic sentencing reduction even if they are currently dangerous and pose an unreasonable public safety risk.

■ For the foregoing reasons, we conclude that the *Estrada* rule is not applicable to the Act. The voters intended amended sections 667 and 1170.12 to be given prospective-only effect. This is consistent with the public safety purpose of the Act. The broad phrasing of section 1170.126(b) evidences the voters' intent to include individuals such as appellant within its ambit and operates as the functional equivalent of a saving clause.

D.   *Section 1170.126(b) is not ambiguous.*

■  The rule of lenity requires courts to "resolve doubts as to the meaning of a statute in a criminal defendant's favor." (*People v. Avery* (2002) 27 Cal.4th 49, 57 [115 Cal.Rptr.2d 403, 38 P.3d 1].) This rule "is inapplicable unless two reasonable interpretations of the same provision stand in relative equipoise, i.e., that resolution of the statute's ambiguities in a convincing manner is impracticable." (*People v. Jones* (1988) 46 Cal.3d 585, 599 [250 Cal.Rptr. 635, 758 P.2d 1165].) " 'The rule [of lenity] applies only if the court can do no more than guess what the legislative body intended; there must be an egregious ambiguity and uncertainty to justify invoking the rule.' [Citation.]" (*People v. Avery, supra*, 27 Cal.4th at p. 58.) While "true ambiguities are resolved in a defendant's favor, an appellate court should not strain to interpret a penal statute in defendant's favor if it can fairly discern a contrary legislative intent." (*Ibid.*)

Appellant argues that the phrase contained in section 1170.126(b)—"serving an indeterminate term of life imprisonment"—is ambiguous because it does not expressly state whether it includes persons sentenced before the effective date of the Act whose judgments are not final and are subject to possible modification on appeal. We do not believe that this circumstance causes any ambiguity.

■  The trial court does not have jurisdiction over a cause during the pendency of an appeal. (*People v. Flores* (2003) 30 Cal.4th 1059, 1064 [135 Cal.Rptr.2d 63, 69 P.3d 979].) A section 1170.126 petition must be filed once the judgment is final and jurisdiction over the cause has been returned to the trial court. Appellant's eligibility for recall of sentence will be determined at that point in time. Section 1170.126(b) contains a "good cause" exception to the two-year filing period. The pendency of appellate proceedings and consequent lack of jurisdiction over the cause in the trial court would necessarily constitute good cause for a filing delay. Thus, the length of the appellate process will not foreclose prisoners whose judgments were not final on the Act's effective date from obtaining relief to which they may be entitled pursuant to section 1170.126.

It is reasonable for the voters to have designed a statutory process where the trial court considers a petition for a recall of sentence after final resolution of legal issues related to the conviction and original sentence (which may have components that are unaffected by the Act). Since we are not required to guess what the voters intended and the competing interpretations of section 1170.126(b) do not stand in relative equipoise, the rule of lenity does not require construction of section 1170.126(b) in the manner advanced by appellant. (*Floyd, supra*, 31 Cal.4th at p. 188.)

E.  *Section 1170.126(k) does not compel retroactive application.*

█ Appellant also argues that section 1170.126(k) can only be reasonably interpreted to include retroactive application of amended sections 667 and 1170.12. We disagree. Section 1170.126(k) provides, "Nothing in this section is intended to diminish or abrogate any rights or remedies otherwise available to the defendant." Section 1170.126(k) protects prisoners from being forced to choose between filing a petition for a recall of sentence and pursuing other legal remedies to which they might be entitled (e.g., petition for habeas corpus). Section 1170.126(k) does not have any impact in determining if amended sections 667 and 1170.12 operate retroactively.

F.  *Prospective-only application does not infringe equal protection rights.*

Appellant's final contention, that prospective-only application of amended sections 667 and 1170.12 infringes his equal protection rights, is not convincing.

█ *Floyd, supra,* 31 Cal.4th 179 is instructive. In that case our Supreme Court rejected the defendant's claim that denying him the benefits of an ameliorative statute creating an alternative drug offender sentencing scheme violated his equal protection rights by creating two classes of nonviolent drug offenders based on the date of conviction. The court reasoned: "Defendant has not cited a single case, in this state or any other, that recognizes an equal protection violation arising from the timing of the effective date of a statute lessening the punishment for a particular offense. Numerous courts, however, have rejected such a claim—including this court." (*Id.* at p. 188.) " '[T]he 14th Amendment does not forbid statutes and statutory changes to have a beginning, and thus to discriminate between the rights of an earlier and later time.' [Citation.]" (*Id.* at p. 191.) The *Estrada* rule is not "constitutionally compelled" and does not require a contrary result. (*Id.* at p. 189.) The *Estrada* decision "recognized that when the Legislature has amended a statute to lessen the punishment, its determination as to which statute should apply to all convictions not yet final, '*either way*, would have been legal and constitutional.' [Citations.]" (*Id.* at pp. 188–189.) Prospective application of the alternative drug offender sentencing scheme furthered legitimate legislative interests. (*Id.* at p. 191.)

█ The rational relationship test has been deemed appropriate to equal protection challenge such as this one. (*Floyd, supra,* 31 Cal.4th at p. 191; *People v. Cruz, supra,* 207 Cal.App.4th at pp. 678–680.) Prisoners are not a suspect class. The status of being incarcerated is neither an immutable characteristic nor an invidious basis of classification. (*People v. Cruz, supra,* 207 Cal.App.4th at p. 676, fn. 11.) █ Prospective application of

amended sections 667 and 1170.12 furthers legitimate interests and does not unfairly discriminate against appellant. A prisoner who was sentenced to an indeterminate life term before the Act's effective date may file a section 1170.126 petition upon finality of the judgment. If qualified, the prisoner will ordinarily receive the same sentencing reduction that would have been obtained if he or she had been resentenced under amended sections 667 and 1170.12. The discretionary public safety exception to second strike sentencing that is present in section 1170.126, but not in amended sections 667 and 1170.12, is rationally related to a legitimate state interest. It increases the likelihood that prisoners whose sentences are reduced or who are released due to the Act will not pose an unreasonable risk of danger to the public. Thus, the distinction drawn between felony offenders sentenced before, and those offenders who are sentenced after the Act's effective date, does not violate appellant's state or federal equal protection rights. (*Floyd, supra,* 31 Cal.4th at pp. 188–191; see *People v. Cruz, supra,* 207 Cal.App.4th at pp. 674–680.)

II. *Independent Review of the Sealed Record Pertaining to the* Pitchess[5] *Proceedings Reveals No Procedural Error or Abuse of Discretion.*

A. *Factual background.*

On July 21, 2011, appellant filed a *Pitchess* motion to permit discovery and disclosure of the personnel records of a named Department of Corrections and Rehabilitation officer. Appellant specifically requested any records pertaining to reports of dishonesty, false testimony and falsification of offense reports and other information. On July 29, 2011, appellant amended his *Pitchess* motion to include records pertaining to reports of racism and discrimination.

On August 24, 2011, the court granted appellant's motion for an in camera hearing to review the officer's personnel records related to dishonesty, false report writing and fabrication of charges. The court did not find that there was a sufficient showing of good cause for an in camera hearing on reports of racism and discrimination. The court conducted an in camera hearing and examined the personnel records. It made the following nonconfidential ruling: "I have looked through the personnel file of [the named officer] and I did not find anything that relates to dishonesty and false report writing . . . . [¶] . . . I'm going to order at this time that no information will be released as a result of this hearing."

In his opening brief, appellant asked this court to independently review the sealed records pertaining to the *Pitchess* proceedings to determine if the

---

[5] *Pitchess v. Superior Court* (1974) 11 Cal.3d 531 [113 Cal.Rptr. 897, 522 P.2d 305] (*Pitchess*).

lower court abused its discretion. Respondent did not object to the requested review. We ordered the trial court to provide us with the sealed documents it reviewed in conducting its *Pitchess* analysis. These documents have been made part of the appellate record without being disclosed to counsel for either party.

### B. *Neither procedural error nor abuse of discretion occurred below.*

"A criminal defendant has a limited right to discovery of a peace officer's personnel records. [Citation.] Peace officer personnel records are confidential and can only be discovered pursuant to Evidence Code sections 1043 and 1045." (*Giovanni B. v. Superior Court* (2007) 152 Cal.App.4th 312, 318 [60 Cal.Rptr.3d 469].) A defendant is entitled to discovery of relevant information from the confidential records upon a showing of good cause, which exists "when the defendant shows both ' "materiality" to the subject matter of the pending litigation and a "reasonable belief" that the agency has the type of information sought.' [Citation.]" (*People v. Gaines* (2009) 46 Cal.4th 172, 179 [92 Cal.Rptr.3d 627, 205 P.3d 1074].)

"If the trial court concludes the defendant has fulfilled these prerequisites and made a showing of good cause, the custodian of records should bring to court all documents 'potentially relevant' to the defendant's motion. [Citation.]" (*People v. Mooc* (2001) 26 Cal.4th 1216, 1226 [114 Cal.Rptr.2d 482, 36 P.3d 21].) The trial court reviews the records in camera to determine what information, if any, should be disclosed. Subject to the exceptions and limitations contained in Evidence Code section 1045, subdivisions (b)–(e), the court must disclose to the defendant such information as is relevant to the subject matter involved in the litigation. (*People v. Gaines, supra*, 46 Cal.4th at p. 179.) A trial court is afforded wide discretion in ruling on a motion for access to law enforcement personnel records. The decision will be reversed only on a showing of abuse of discretion. (*People v. Hughes* (2002) 27 Cal.4th 287, 330 [116 Cal.Rptr.2d 401, 39 P.3d 432].)

We have examined the record of the trial court's in camera examination of the officer's personnel file. The trial court complied with the procedural requirements of a *Pitchess* hearing. A court reporter was present and the custodian of records was sworn prior to testifying. (*People v. Mooc, supra*, 26 Cal.4th at pp. 1228, 1229, fn. 4; *People v. White* (2011) 191 Cal.App.4th 1333, 1339–1440 [120 Cal.Rptr.3d 332].) The custodian of records complied with the requirement to bring all the records and submit them for review by the court. (*People v. Wycoff* (2008) 164 Cal.App.4th 410, 414–415 [78 Cal.Rptr.3d 907].)

Our review of the sealed personnel file "reveals no materials so clearly pertinent to the issues raised by the *Pitchess* discovery motion that failure to

disclose them was an abuse of *Pitchess* discretion." (*People v. Samayoa* (1997) 15 Cal.4th 795, 827 [64 Cal.Rptr.2d 400, 938 P.2d 2].) Judicial discretion was not abused. (*Ibid.*)

## DISPOSITION

The judgment is affirmed.

Hill, P. J., and Kane, J., concurred.

A petition for a rehearing was denied February 19, 2013, and the opinion was modified to read as printed above. Appellant's petition for review by the Supreme Court was denied May 1, 2013, S209069. Werdegar, J., was of the opinion that the petition should be granted.