Filed 3/24/14  P. v. Knott CA2/6

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.111.5.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| THE PEOPLE,<br><br>  Plaintiff and Respondent,<br><br>v.<br><br>CHARRON R. KNOTT,<br><br>  Defendant and Appellant. | 2d Crim. No. B247498<br>(Super. Ct. No. MA054792-01)<br>(Los Angeles County) |

Charron Knott appeals from the judgment after a jury convicted him of two counts of corporal injury to a spouse/cohabitant/child's parent (Pen. Code, § 273.5, subd. (a))[1] and two counts of assault by means likely to produce great bodily injury (§ 245, subd. (a)(1)).  In a bifurcated proceeding, appellant admitted two prior strike convictions (§§ 667, subds. (b) -(i); 1170.12, subds. (a) - (d)) and two prior prison term enhancements (§ 667.5, subd. b)).  The trial court sentenced him as a Three Strikes offender to 75 years to life state prison.   Appellant contends that the conviction is not supported by the evidence and the trial court committed sentencing errors.  We affirm the judgment of conviction and remand for resentencing.  The Three Strikes Reform Act of 2012, which became operative four months before appellant was sentenced, requires that appellant receive a two strikes determinate sentence.  (§§ 667, subd. (e)(2)(C); 1170.126, subd. (e)(2); *People v. Yearwood* (2013) 213 Cal.App.4th 161, 168.)

---

[1] All statutory references are  to the Penal Code unless otherwise stated.

*Facts and Procedural History*

A jury convicted appellant based on evidence that he quarreled with and strangled his wife, Shannea Knott, and his girlfriend, Shaneece Stenhouse. In both domestic violence incidents, appellant accused the victim of infidelity.

*Shannea Knot*

On November 28, 2011, appellant and Knott argued in a car near the Angeles Forest. Appellant refused to let Knott out and hit, scratched, and choked her.

The next day, appellant quarreled with Knott at her apartment and smashed a window. Appellant accused Knott of cheating on him, demanded to see her cell phone, put his hands around her neck, and strangled her until she was almost unconscious.

Los Angeles County Deputy Sheriff David Fletcher responded to the 911 domestic violence call. Knott was pregnant with appellant's child and said that she and appellant had been married 11 months. Appellant accused Knott of cheating on him, choked her, and stated: "Unlock your phone, Bitch. I'm gonna kill you and this baby." Knott said that appellant assaulted her the day before in the Angeles Forest and had bite marks on her leg, bruises, scratches, and cuts. Deputy Fletcher took photos of the injuries.

Sheriff's Detective India Indez interviewed Knott on December 1, 2011. Knox said that appellant drove her to the Angeles Forest against her will, bit her on the calf, scratched and hit her, and strangled her. Knott reported the incident because she feared appellant would kill her and kept threatening to do so.

Forensic nurse examiner Bridgett Amis examined Knott at the Antelope Valley Hospital on December 1, 2012. Knott said that appellant trapped her in the car, held her down, used a box cutter to cut off her clothing, and choked and strangled her three or four times. Knott complained of chest pain, sore throat, difficulty swallowing, nausea, vomiting, and pain in the arms, legs and neck. Forensic nurse examiner Sylvia Finke photographed the injuries which included finger marks and scratches on Knott's neck, bruises and scratches on the hips and legs, and a bite mark. Finke opined that the injuries were consistent with Knott's account of the domestic violence.

On December 3, 2011, appellant drove by Knott's apartment several times and made threatening phone calls. Appellant told Knott, "I don't give a fuck if I go to jail. But before I go to jail, I'm going to kill you!" Knott told the 911 operator that appellant "busted my window" and "beat me really bad" on two occasions. As soon as Knott got a domestic violence order, appellant threatened to "kill me and the kids."

At trial, Knott claimed that she lied to the police because appellant was leaving her. On cross-examination, Knot admitted visiting appellant in jail and phoning him 15 times.

*Shaneece Stenhouse*

Shaneece Stenhouse and appellant have a son and had an "off-and-on relationship." On January 6, 2012, appellant argued with Stenhouse, grabbed her by the throat, and slammed her against the wall. Appellant was 6' 5" tall and weighed 240 pounds. He over-powered Stenhouse and strangled her until she lost consciousness. When Stenhouse woke up, appellant offered her a glass of water, and apologized.

Stenhouse was treated at the hospital and spoke to Deputy David Nisenoff on January 7, 2012. The deputy photographed bruises on Stenhouse's leg, a cut on the side of her head, a bruise under the left eye, and redness to her neck.

After appellant was arrested, Stenhouse visited him in jail and called more than a hundred times. Some of the calls were recorded. Appellant demanded that she deposit money in his account so he could make phone calls. In one call, appellant accused Stenhouse of cheating on him and said, "You hang up on me, blood, I swear to God I'm going to have someone come to your fucking house right now." Appellant said: "[W]hen this shit over . . . I'm going to hurt your shit." In a second call, appellant threatened to "get your punk ass hurt." Appellant blamed Stenhouse and her mother for his arrest and said: "[W]hen I get up out of here, I'm going to break your shit. [¶] . . . [¶] . . . I'm going to break your fucking mouth." In a third call, appellant told Stenhouse that she was a "[f]ucking liar." "That's why I fucking slapped the shit out of your stupid ass like the way I did, you punk ass bitch."

*Prior Acts of Domestic Violence*

Evidence was received that appellant committed other acts of domestic violence. (Evid. Code, § 1109.) On November 21, 2011, Knott told Deputy Sheriff Matt Prather that appellant jumped on her, choked her, and pushed her down to the ground and threatened her. When Knott tried to stop appellant from taking her child to school, appellant punched her in the chest and on the side of the head. Deputy Prather took photos of Knott's neck scratches which were still bleeding.

Latasha Phillips testified that she and appellant had a son but were no longer living together. On August 24, 2010, appellant entered Latasha Phillips' bedroom where she was sleeping. When Phillips told him to leave and tried to call the police, appellant threw the phone against the wall. Appellant jumped on top of Phillips and choked her with his right hand. Phillips pretended to pass out and called 911 after appellant left.

Before trial, appellant called Phillips and said "you better hope I don't get out of jail, you better hope I don't beat this case, blood . . . I'm going to fuck you up, I'm going to fuck the bitches up . . . I'm going to fuck all you bitches up."

*Substantial Evidence*

Appellant argues that the convictions are not supported by the evidence because the victims recanted and made inconsistent statements. A reversal is unwarranted unless it appears that upon no hypothesis whatever is there sufficient substantial evidence to support the jury's verdict. (*People v. Zamudio* (2008) 43 Cal.4th 327, 357.) On review, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. [Citation.]" (*Jackson v. Virginia* (1979) 443 U.S. 307, 319 [61 L.Ed.2d 560, 573].)

Appellant claims that the victims assaulted him and he was merely defending himself. The same argument was rejected by the jury. The trial court instructed that the prosecution had to prove that appellant did not act in self-defense and "[i]f you have a reasonable doubt that the application of physical force was unlawful, you must find the defendant not guilty." (CALJIC 9.00.) The jury was instructed that a person threatened

4

with an attack need not retreat and may stand his ground and defend himself.  (CALJIC 5.50.)

Knox's domestic violence report was corroborated by the 911 call, photos of the injuries, Knox's statements to the deputies and domestic violence forensic examiners, her statement to Detective Inez, the jail house phone calls, and the prior acts of domestic violence.  On review, we do no reweigh the evidence of resolve credibility issues.  (*People v. Maury* (2003) 30 Cal.4th 342, 403.)

Stenhouse recanted and claimed that she would lose her children if she did not cooperate with the police.  In rebuttal, Detective India Inez  and Department of Children and Family Services Social Worker Klyia McNear testified that no one threatened to take the children.  Stenhouse's account of the domestic violence was corroborated by Deputy Nisenoff, by the hospital treatment, by photos of the injuries  by her mother (Cindy Bowden)  and Detective Inez, and by the jail house phone calls.  It was strong evidence of guilt.

*Romero Motion*

Appellant asserts that the trial court abused its discretion in denying his *Romero* motion (*People v. Superior Court* (*Romero* ) (1996) 13 Cal.4th 497) to strike the prior strike convictions.  In ruling on a *Romero* motion, the trial court considers the nature and circumstances of the present felony offense, defendant's prior serious and/or violent felony convictions, and defendant's background, character and prospects.  (*People v. Williams* (1998) 17 Cal.4th 148, 161.)

The trial court noted that appellant's criminal record began when he was 12 years old and that appellant had an extensive criminal record.  In 1999 appellant committed a battery and was counseled and released.  In 2000 he was counseled and released for fighting,  Two months later, a juvenile petition was sustained for burglary.  After appellant was granted probation, he had a sustained petition for grand theft.  In 2003 appellant was placed in juvenile camp and a new petition was sustained for assault with a deadly weapon.  In 2004, a juvenile petition was sustained for robbery, appellant's first strike offense.

As an adult, appellant was convicted of assault with a deadly weapon and sentenced to two years state prison. Appellant was next convicted of making criminal threats, vandalism and battery, and sentenced to three years state prison. Appellant returned to prison in 2007 for violation of parole, was convicted of theft in 2008, and in 2008 and 2009, returned to prison on parole violations. In 2010, appellant was convicted of intimidation of a witness (his second strike offense) and sentenced to two years state prison.

The probation report listed no mitigating factors and six aggravating factors, noting that the prior offenses were numerous and of increasing seriousness, and that appellant was on parole when he committed the current offenses. Unlike *People v Bishop* (1997) 56 Cal.App.4th 1245 in which the prior strikes were 17 to 20 years old, appellant's prior strike offenses were not remote in time and of increasing seriousness.

Based on appellant's age (26), his history of violence, the prior commitments to juvenile camp and prison, and appellant's failed attempts at parole and probation, the trial court did not abuse its discretion in denying the *Romero* motion. (See e.g., *People v. Williams, supra,* 17 Cal.4th at pp. 162-164; *People v. Humphrey* (1997)*,* 58 Cal.App.4th 809, 812-813.) Once a career criminal commits the requisite number of strikes, the circumstances must be " 'extraordinary' " before he or she can be deemed to fall outside the spirit of the Three Strikes law. (*People v. Carmony* (2009) 33 Cal.4th 367, 378.) Appellant's criminal history and recidivism, marked by violent assaults, clearly shows that he cannot refrain from criminal activity. (See e.g., *People v. Strong* (2001) 87 Cal.App.4th 328, 340.)

*Proposition 36*

Appellant argues that that the 75-year-to-life sentence violates Proposition 36, also known as the Three Strikes Reform Act of 2012 (Act), which became operative November 7, 2012. (§§ 667, subd. (e)(2)(C); 1170.12, subd. (c)(2)(C); 1170.126.) Although the felony offenses were committed in 2011, appellant was sentenced March 13, 2013. Under the Act, Three Strikes offenders whose current offense is neither serious nor violent must be sentenced as if they had just one strike unless the prosecution pleads and

6

proves an enumerated disqualifying offense.  (See § 667, subd. (e)(2)(C), § 1170.12, subd. (c)(2)(C).)[2]

The Attorney General concedes that corporal injury to a spouse or cohabitant (§ 273.5, subd. (a)) and assault by means likely to produce great bodily injury (§ 245, subd. (a)(1) are not serious felonies within the meaning of section 1192.7, subdivision (c)(8) or violent felonies within the meaning of section 667.5, subdivision (c)(8).  (See e.g., *People v. Winters* (2001) 93 Cal.App.4th 273, 275 [assault of girlfriend not serious or violent felony].)  Nor did the prosecution plead and prove that appellant actually inflicted great bodily injury on the victims.  (§ 12022.7.)  The Three Strikes Reform Act reserves "the life sentence for cases where the current crime is a serious or violent felony or the prosecutor has pled an enumerated disqualifying factor.  In all other cases, the recidivist will be sentenced as a second strike offender."  (*People v. Yearwood, supra,* 213 Cal.App.4th at pp. 167-168.)

The Attorney General opines that appellant's remedy is to file a section 1170.126 petition to recall the sentence.  We disagree.  "There is no 'savings clause' in Proposition 36 that would limit its application to crimes committed after its effective date.  [¶]  . . . As to cases not final as of November 7, 2012, the defendant will not be required to submit a petition for resentencing under section 1170.126. . . These defendants simply must request sentencing or resentencing under sections 667 and 1170.12 as they now exist."  (Couzens & Bigelow, California Three Strikes Sentencing  (/The Rutter Group 2013) § 1.1, p. 1-2.)

---

[2] Section 667, subdivision (e)(2)(C) provides in pertinent part:  "If a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (e) of Section 1192.7 that have been pled and proved, and the current offense is not a serious or violent felony as defined in subdivision (d), the defendant shall be sentenced pursuant to paragraph (1) of subdivision (e)" as a Second Strike offender.

Section 1170.12, subdivision (c)(2)(C) provides in pertinent part:  "If a defendant has two or more prior serious and/or violent felony convictions as defined in subdivision (c) of Section 667.5 or subdivision (c) of Section 1192.7 that have been pled and proved, and the current offense is not a felony desdcribed in paragraph (1) of subdivision (b), of this section, the defendant shall be sentenced pursuant to paragraph (1) of subdivision (c)" as a Second Strike offender.

A section 1170.126 petition applies to defendants who were convicted and sentenced before November 7, 2012, the effective date of the Act. "[T]here are two parts to the Act: the first part is *prospective* only, reducing the sentence to be imposed in future three strikes cases where the third strike is not a serious or violent felony. (Pen. Code, §§ 667, 1170.12); the second part is *retrospective*, providing *similar, but not identical,* relief for prisoners already serving third strike sentences in cases where the third strike was not a serious or violent felony (Pen. Code, § 1170.126)." (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279. 1292.)

*People v. Yearwood, supra,* 213 Cal.App.4th 161 addresses the second part of the Act. There, a two strikes offender was convicted of unlawfully possessing marijuana in prison and sentenced to 25 years to life before the passage of the Act. The Court of Appeal affirmed the sentence, holding that that Proposition 36 had a prospective-only application and that defendant's remedy was to file a section 1170.126 to recall the sentence. In dicta, the court stated: "It is undisputed that if appellant had been sentenced for the marijuana possession conviction after the effective date of the Act, an indeterminate life sentence would not have been imposed." (*Id.*, at p. 168.)

Appellant's case deals with the first part of the Act because appellant was sentenced on March 13, 2013, four months after the passage of the Act. Under the Act, the trial court must treat appellant as a second strike offender and impose a determinate sentence. (§§ 667, subd. (e)(2)(C); 1170.126, subd. (e)(2); *People v. Yearwood*, *supra,* 213 Cal.App.4th 161, 168.) The judgment of conviction is affirmed and the matter is remanded for resentencing.

NOT TO BE PUBLISHED.
\

                                        YEGAN, J.

We concur:

        GILBERT, P.J.


        PERREN, J.


8

Charles A. Chung, Judge

Superior Court County of Los Angeles

_____

Murray A. Rosenberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Dane R. Gillette, Chief Assistant Attorney General, Lance E. Winters, Senior Assistant Attorney General, Margaret E. Maxwell, Victoria B. Wilson, Supervising Deputy Attorneys General, Yun K. Lee, Deputy Attorney General, for Plaintiff and Respondent.