Filed 1/12/15  P. v. Johnson CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

|  |  |
|---|---|
| THE PEOPLE,  Plaintiff and Respondent,  v.  MARK TIMOTHY JOHNSON,  Defendant and Appellant. | D064993  (Super. Ct. No. SCD125951) |

APPEAL from orders of the Superior Court of San Diego County, David J. Danielson, Judge.  Affirmed.

Mazur & Mazur and Janice R. Mazur, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Senior Assistant Attorney General, Barry Carlton and Warren Williams, Deputy Attorneys General, for Plaintiff and Respondent.

# I.

## INTRODUCTION

Mark Timothy Johnson appeals from an order denying his petition for recall of sentence pursuant to the Three Strikes Reform Act of 2012 (Pen. Code, § 1170.126),[1] and from an order denying his motion for reconsideration of that ruling. On appeal, Johnson contends that the trial court abused its discretion in determining that he is not eligible for resentencing because he poses "an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).) We affirm the trial court's orders.

# II.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *The commitment offense*

In 1997, a jury found Johnson guilty of unlawful driving or taking of a vehicle (Veh. Code, § 10851, subd. (a)). At sentencing, the court found that Johnson had suffered two prior serious or violent felony convictions (§§ 667, subds. (b)-(i), 1170.12), and sentenced him to an indeterminate term of 25 years to life in prison.

B.    *Johnson's petition for recall of sentence*

Johnson filed a petition for recall of sentence in January 2013. In his brief in support of his petition, Johnson acknowledged that he had suffered two prior strike convictions in 1991 (stemming from two robbery (§ 211) convictions), and that he had

---

[1]    Unless otherwise specified, all subsequent statutory references are to the Penal Code.

been incarcerated for 16 years for the commitment offense. Johnson further acknowledged that his incarceration "began with a rocky start," in that he incurred several disciplinary reports for committing various rules violations, including possessing a weapon. Johnson also acknowledged that he was involved in a "serious race riot" in 2000, and that he was subsequently found guilty of using a weapon on another inmate during the riot.

Johnson contended that his actions that led to his being disciplined in prison were partially due to his participation in a prison gang called the Nazi Low Riders (NLR). However, Johnson maintained that beginning in 2002, he began to disassociate himself from the gang lifestyle, and that the Department of Corrections validated him as an "NLR dropout" in 2009.

Johnson also noted that his prison disciplinary record had greatly improved in recent years, and that "[s]ince 2008, [he] has been an above average inmate." In addition, Johnson stressed that he had taken several educational classes while in prison, obtained his GED, and received numerous certifications of merit for completing various rehabilitative programs. Johnson also contended that he had realistic employment prospects if he were to be released.

Johnson supported his motion with various documents, including prison records documenting his status as an NLR "dropout," copies of certificates attesting to his completion of various educational and rehabilitative programs while in prison, and letters from family members offering to provide assistance upon his release.

3

C.    *The People's response*

The People filed a response to the petition in which they "submit[ted] to the Court's discretion" on the question whether the court should resentence Johnson. The People requested that the court place Johnson under community supervision in the event that the court elected to release him from prison.

In their response, the People outlined Johnson's extensive criminal history,[2] which, the People argued, "indicates that [Johnson] is capable of committing serious violence." For example, the People contended that Johnson had shot at two different men[3] during the 1991 crime spree that resulted in his strike convictions. The People further maintained that it appeared that Johnson's drug and alcohol abuse was likely a factor that led to his commission of crimes. In addition, the People argued that Johnson had "difficulty maintaining his sobriety" and had "continued to commit violence" while in prison. To that end, the People noted that Johnson had accumulated 14 serious rule infractions while incarcerated, including violations for possessing weapons, committing a battery on an inmate, and being under the influence of alcohol. The People did acknowledge that Johnson had suffered only two serious rule violations since 2008, but noted that one of those violations was for possessing an inmate-manufactured weapon.

---

[2]    The People noted that Johnson had suffered a total of 13 criminal convictions in his lifetime.

[3]    A probation report that the People offered in support of their response indicated that one of the men at whom Johnson had shot was in fact struck by the gunshot.

4

The People supported their response with copies of probation reports from Johnson's commitment offense and strike offenses as well as copies of reports documenting Johnson's prison disciplinary history.

D.    *The trial court's ruling*

The trial court held a hearing on Johnson's petition on October 16, 2013. At the outset of the hearing, the court outlined the materials that it had reviewed and stated the following:

> " . . . Mr. Johnson's crime spree in 1991 was impressive for its dangerousness. He not only shot somebody, but he shot at somebody else. And the willingness to do that sort of act is very concerning to any right-thinking individual.
>
> "That is only the beginning of the inquiry. Some individuals go to prison and, faced with a life in prison sentence, lose all hope and behave accordingly. Others, it appears, see the light and do some things.
>
> "And so his prison record is both somewhat positive—he's undertaken some activities—and somewhat negative.
>
> "The most significant things that he's done in prison are two. They fall into two categories. One is he was associated with a gang previously. And he's taken steps—and the court applauds his steps—to step away from the gang. And that's been documented.
>
> "But his record in prison is full of violence and weapons, accompanied by other, less troubling, but still, in the presence of weapons and violence, troubling activity relating to substances that are banned in prison.
>
> "So, in '99, he's involved in weapons. [In] 2000, he's involved in a riot. People get hurt. And then, even as late as 2010, he's disciplined for weapons."

5

After hearing argument from counsel, the trial court denied the petition, ruling: "After review of all the material that has been submitted and after considering the arguments, the court, in its discretion, determines that resentencing this petitioner would pose an unreasonable risk of danger to public safety."

E.      *Johnson's motion for reconsideration and appeal*

Johnson filed a motion for reconsideration of the trial court's order denying his petition for recall of sentence. In his motion, Johnson argued that his strike offenses were remote in time, and that his rehabilitative efforts in prison and improved prison disciplinary history demonstrated that resentencing him would not pose an unreasonable risk to society. Johnson also emphasized that the People "did not oppose" his petition for recall of sentence. In addition, Johnson submitted a psychological evaluation that Dr. Shayna Gothard had prepared in the wake of the trial court's denial of Johnson's petition for recall of sentence. Johnson acknowledged that Dr. Gothard diagnosed him as having both an antisocial personality disorder and substance abuse disorder, but contended that Dr. Gothard considered these disorders to be "in remission." Johnson also noted that Dr. Gothard believed that he posed a "low risk" for committing a future violent felony offense, and concluded that he did not pose an " 'unreasonable' " risk to public safety if released.

The trial court held a hearing on the motion for reconsideration. After hearing argument from counsel, the court denied the motion. That same day, Johnson filed a notice of appeal of the trial court's order denying his motion for reconsideration.

6

III.

DISCUSSION

A.     *Appealability*

The denial of a defendant's petition for recall of sentence pursuant to section 1170.126 is an appealable order.  (See *Teal v. Superior Court* (2014) 60 Cal.4th 595 (*Teal*).)  In this case, Johnson appealed from an order denying his *motion for reconsideration* of an order denying his section 1170.126 petition.  We are aware of no authority discussing the appealability of an order denying a motion for reconsideration of an order denying a section 1170.126 petition, and neither party addresses the appealability of such an order in their briefing on appeal.  For the reasons discussed below, we conclude that we may review the merits of Johnson's claim.

Section 1170.126, subdivision (b) permits individuals, such as Johnson, who are serving indeterminate sentences under the Three Strikes law and whose current conviction is not based on a serious or violent felony, to file a petition for recall of sentence.  Further, Johnson was permitted to appeal from the trial court's October 16 order denying his section 1170.126 petition.[4]  (See *Teal*, *supra*, 60 Cal.4th 595.)  We conclude that Johnson may appeal from the trial court's November 25 order denying his motion for reconsideration of the court's ruling denying his section 1170.126

---

[4]     Johnson's notice of appeal was timely as to the original October 16 order denying Johnson's petition for recall of sentence.  Thus, we construe his notice of appeal as an appeal from both the October 16 order and the November 25 order.  (See *In re Z.A,* (2012) 207 Cal.App.4th 1401, 1405 ["A notice of appeal is to be construed liberally"].)

7

petition, since that order also constitutes a postjudgment order affecting Johnson's "substantial rights." (§ 1237, subd. (b); cf. Code Civ. Proc., § 1008, subd. (g) ["if the order that was the subject of a motion for reconsideration is appealable, the denial of the motion for reconsideration is reviewable as part of an appeal from that order"].)

Even if we were to conclude that the trial court's order denying Johnson's motion for reconsideration is a nonappealable order, in light of the uncertainty concerning the appealability issue, we would construe Johnson's appeal as a petition for writ of habeas corpus or writ of mandate, and would consider the merits of his claim. (See *People v. Segura* (2008) 44 Cal.4th 921, 928, fn. 4 [treating appeal from nonappealable order as petition for writ of habeas corpus].) Accordingly, we review the merits of Johnson's appeal.

B.    *The trial court did not abuse its discretion in denying Johnson's petition for recall of sentence* 5

1.    *Governing law and standard of review*

The electorate passed Proposition 36, the Three Strikes Reform Act of 2012 (The Act), in November 2012. The Act changes the requirements for sentencing a third strike offender. (People v. Yearwood (2013) 213 Cal.App.4th 161, 167 (Yearwood).) Under the former version of the three strikes law, an individual with two or more prior strikes who

---

5      Although, as discussed in part III.A., *ante*, the court issued an October 16 order denying Johnson's petition for recall of sentence and a November 25 order denying reconsideration of the October 16 order, in the parties' briefing on appeal, they treat the orders in combination, addressing the single issue of whether the trial court erred in denying Johnson's petition for recall of sentence. We therefore consider the orders in combination, and address the issue as framed by the parties.

is convicted of any new felony may be sentenced to an indeterminate life sentence.  (Id. at p. 167.)  Under the new version, a life sentence for a third strike offender is reserved for cases in which the new felony is also serious or violent, or the prosecution has pled and proved an enumerated disqualifying factor.  (Id. at pp. 167-168.)  In all other cases, a third strike offender is to be sentenced as a second strike offender.  (Id. at p. 168.)

The Act also created a procedure permitting the resentencing of "persons presently serving an indeterminate term of imprisonment [under the three strikes law], whose sentence under this act would not have been an indeterminate life sentence," under certain enumerated circumstances.  (§ 1170.126, subd. (a).)  In *Yearwood*, the court summarized this resentencing procedure as follows:

"To obtain a sentencing reduction pursuant to section 1170.126, the prisoner must file a petition for a recall of sentence in the trial court.  'Any person serving an indeterminate term of life imprisonment imposed pursuant to' the three strikes law may file a petition for a recall of his or her sentence within two years after the Act's effective date 'or at a later date upon a showing of good cause.'  (§ 1170.126, subd. (b), hereafter 1170.126(b).)  Upon receipt of such a petition, the trial court must determine if it satisfies the criteria contained in subdivision (e) of section 1170.126.  (§ 1170.126, subd. (f).)  If it does, the prisoner shall be resentenced as a second strike offender '*unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety*.'  (§ 1170.126, subd. (f).)  In exercising this discretion the trial court may consider the prisoner's criminal history, disciplinary record and record of

9

rehabilitation while incarcerated and any other relevant evidence. (§ 1170.126, subd. (g).)" (*Yearwood*, *supra*, 213 Cal.App.4th at pp. 170-171, italics added.)

Because the statute expressly vests discretionary power in the trial court (§ 1170.126, subd. (f) [requiring resentencing unless "in its discretion" the court determines the resentencing would pose an unreasonable risk of danger to public safety]), we are necessarily governed by the deferential abuse of discretion standard of review. (See *People v. Aparicio* (Jan. 5, 2015, D064995) ___ Cal.App.4th ___ [2015 Cal.App. LEXIS 1]; *People v. Payne* (Dec. 17, 2014, F067838) ___ Cal.App.4th ___ [2014 Cal.App. LEXIS 1158].)[6] "Where, as here, a discretionary power is statutorily vested in the trial court, its exercise of that discretion 'must not be disturbed on appeal except on a showing that the court exercised its discretion in an arbitrary, capricious or patently absurd manner that resulted in a manifest miscarriage of justice." (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124-1125, italics omitted.)

2.    *Application*

In determining whether resentencing Johnson under the Act would pose an unreasonable risk of danger to public safety, the trial court expressly considered the statutory factors. (§ 1170.126, subd. (g) [in exercising discretion as to whether to resentence prisoner a trial court may consider "petitioner's criminal conviction history" and "the petitioner's disciplinary record and record of rehabilitation while incarcerated"].)

---

6      Johnson does not contend that a different standard of review applies on appeal, and argues that "the court abused its discretion in finding that the petitioner poses an unreasonable risk of danger to public safety."

As the trial court acknowledged, Johnson has made significant rehabilitative efforts while in prison. He has disassociated from a prison gang, achieved considerable educational success, and completed numerous self-help programs. However, as the trial court also observed, Johnson has both a lengthy criminal record and an extensive prison disciplinary record. Moreover, Johnson's criminal history and prison disciplinary record demonstrate that he has engaged in numerous acts of violence, and that he has a significant substance abuse problem. Further, while Johnson's prison disciplinary record has significantly improved over the course of his incarceration, he committed violations as recently as 2009 for possessing alcohol and in 2010 for possessing a weapon. In addition, a recent psychological evaluation performed by an expert for the defense diagnosed Johnson as having an antisocial personality disorder.

Under these circumstances, even assuming that we might have exercised our discretion differently, it is clear that the trial court did not act in an "arbitrary, capricious or patently absurd manner" (*People v. Rodrigues*, *supra*, 8 Cal.4th at p. 1125) in determining that resentencing Johnson would pose an "unreasonable risk of danger to public safety" (§ 1170.126, subd. (f)), and in denying his petition for recall of sentence. (See *People v. Carrasco* (2014) 59 Cal.4th 924, 955 [" 'The abuse of discretion standard . . . reflects the trial court's superior ability to consider and weigh the myriad factors that are relevant to the decision at hand' "].)

Accordingly, we conclude that the trial court did not err in denying Johnson's petition for recall of sentence.

11

IV.

DISPOSITION

The October 16, 2013 and November 25, 2013 orders are affirmed.

                                                  _____

                                                                  AARON, J.

WE CONCUR:

_____

               McCONNELL, P. J.

_____

                  McINTYRE, J.