Filed 7/23/15  P. v. Cooper CA3

## NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

# IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## THIRD APPELLATE DISTRICT

### (Placer)

----

| | |
|---|---|
| THE PEOPLE, | C076884 |
| Plaintiff and Respondent, | (Super. Ct. No. 62-126872) |
| v. | |
| JUSTIN MICHAEL COOPER, | |
| Defendant and Appellant. | |

Defendant Justin Michael Cooper appeals his conviction following a jury trial. Defendant was sentenced to state prison for the aggregate term of six years—the upper term of four years on count two for unlawful taking or driving of a vehicle (Veh. Code, § 10851, subd. (a)) and the midterm of two years on count three for receiving stolen property (Pen. Code, § 496, subd. (a)),[1] plus one year each for two prior prison term enhancements (§ 667.5).

---

[1] Undesignated statutory references are to the Penal Code.

1

Defendant contends (1) the trial court erred in excluding evidence relevant to discrediting a prosecution witness and establishing third party culpability, and (2) that this court should reduce his conviction for receiving stolen property (§ 496, subd. (a)—count three) to a misdemeanor pursuant to Proposition 47. We disagree and shall affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The victim took her 2011 Maserati to an auto repair shop to have work performed on it in September 2013. She left the car with the repair shop while its staff waited for parts to be delivered from Italy. Staff recalled that the car was parked in an open garage in the back lot of the facility, and was there on Friday evening, when the auto repair shop closed for the weekend. The lot is enclosed by a chain-link, barbed wire fence, with two vehicle rolling fences along the perimeter, and is monitored by security cameras. When staff returned the following Monday, one of the rolling fences had been unbolted from its hinges, six sets of keys had been stolen from a lock box (including the keys to the Maserati), some cars had been moved, and the Maserati was missing. The repair shop informed law enforcement of the theft.

Around the same time as the theft occurred, Karina Thompson, a live-in caretaker for a retired disabled veteran, was at her patient's new apartment in Sacramento. The patient asked Thompson to leave the apartment for a little while. She did not have a car, so she contacted defendant, though he did not have a car either. Defendant came to the apartment to pick Thompson up driving a Maserati; Thompson had never seen the car before, assumed it was borrowed, and, at the time, did not realize it was a Maserati or expensive. Thompson got into the car with defendant, who suggested they drive to Lake Tahoe. They got lost on their drive, ate in a small town, went to a beach, and returned later that evening to a Roseville apartment where Thompson's patient had lived before.

Thompson had keys to the apartment and her patient's permission to enter the apartment to collect his mail and some of his belongings.

During the course of the day, defendant took pictures of Thompson in front of the car on her cell phone, and they took a picture of themselves in the car with defendant in the driver's seat and Thompson in the passenger seat. She also drove the car part of the time. There was also a photograph from a traffic camera showing defendant driving the Maserati with Thompson in the passenger seat. Defendant initially did not tell Thompson where he got the car, but later in the day he indicated he got it from "a car service place," where the keys were "accessible." At some point during the day, Thompson noticed a "black sock-looking thing" with what felt like keys inside on the passenger side floorboard of the car. Defendant mentioned to Thompson the idea of going back to the same facility to get another car, but she disregarded it as joking. He also mentioned that he wanted to get a Porsche.

Officers located the Maserati in the parking lot of the Roseville apartment complex where defendant and Thompson were. Officers knocked on the door to the apartment. Defendant did not want Thompson to open the door, and while she waited to open it, defendant ran back and forth to the bedroom, where he had placed a dark-colored backpack when he and Thompson arrived there. Officers entered the apartment, where they found a backpack containing men's clothing and "a plastic-wrapped, black-and-chrome logo" stamped "Maserati Genuine Parts." They also recovered the key to the Maserati, and in the Maserati they found a black sock with several key sets inside.

## DISCUSSION

### I. Exclusion of Evidence

Defendant contends the trial court abused its discretion and violated defendant's right to present a defense by excluding, as unduly consumptive of time and misleading,

evidence that was relevant to third party culpability and to impeaching a witness's credibility. Specifically, defendant challenges the trial court's ruling that defendant could not introduce evidence that Thompson was the subject of a pending unrelated criminal case in which it was alleged she had received a stolen vehicle. We conclude defendant forfeited any argument regarding the admissibility of the evidence based on third party culpability by failing to raise it in the trial court, and that the trial court did not err in excluding the evidence for purposes of impeachment.

Thompson was charged (though not yet convicted) in an unrelated case with receiving a stolen vehicle based on an incident occurring *after* the crime charged in the instant case. Defendant sought to cross-examine Thompson regarding the incident, and to introduce evidence from four witnesses to establish that Thompson knowingly received the stolen vehicle and blamed another for the crime. Both parties contemplated that the additional testimony would take approximately a half-day.

The People acknowledged that whether Thompson had been found in possession of a stolen vehicle in the other case was relevant, but nonetheless requested that the trial court exclude the evidence pursuant to Evidence Code section 352 as unduly consumptive of the trial court's time. Defendant argued Thompson gave varying and inconsistent accounts that are relevant to "her veracity." He also argued that as the prosecution's "star witness," and the only witness to provide evidence that defendant knew the car was stolen or intended to permanently deprive the owner of the vehicle, impeaching her could undermine the prosecution's entire case.

After expressly clarifying that defendant's purpose in eliciting this evidence was to "further impeach Ms. Thompson," the trial court excluded the evidence. It stated its reasoning as follows: "The Court believes that, from what I have heard, on balance, under Evidence Code Section 352, there is a risk of confusing the issues and misleading the jury, essentially turning the trial into a prosecution against Ms. Thompson. The Court

4

has already ruled that the defense may attempt to impeach Ms. Thompson by virtue of her prior felony convictions. And therefore, her credibility, if that evidence comes in, will be placed squarely before the jury, in any event. [¶] There would be a consumption of time, and I think in this particular case, it would be undue. I think there is a risk, a substantial risk of confusing the issues and misleading the jury were that to play out. [¶] So therefore, pursuant to Evidence Code Section 352, the Court will direct that there be no evidence elicited from Ms. Thompson concerning the charge, yet unproved, events relating to the alleged [Penal Code section 496d] felony that's charged in the case against her . . . ."[2]

As to defendant's contention on appeal that the evidence regarding Thompson's alleged receipt of a stolen vehicle in the pending case should have been admitted because it was relevant to establish third party culpability, we deem this contention forfeited. "[T]he proponent of evidence must identify the specific ground of admissibility at trial or forfeit that basis of admissibility on appeal." (*People v. Ervine* (2009) 47 Cal.4th 745, 783.) For, "[a] party cannot argue the court erred in failing to conduct an analysis it was not asked to conduct." (*People v. Partida* (2005) 37 Cal.4th 428, 435.) Here, defendant did not argue in the trial court that the evidence was admissible on that basis. Defendant limited his argument on relevancy to impeaching Thompson as a witness by attacking her credibility based on her lies regarding the charged incident. Therefore, defendant may not argue on appeal that the trial court erred in excluding the evidence on the basis that it was relevant to establish third party culpability.

---

[2] The trial court permitted, over an Evidence Code section 352 objection, defendant to ask Thompson whether she was facing a pending case in which she was charged with a crime of moral turpitude and whether she believed she would be receiving any special treatment in that case because she was testifying in defendant's case. That case involved receipt of stolen savings bonds.

As to defendant's contention that the evidence should have been admitted for impeachment purposes, we find no abuse of discretion by the trial court in excluding the evidence on that basis. "A witness may be impeached with any prior conduct involving moral turpitude whether or not it resulted in a felony conviction, subject to the trial court's exercise of discretion under Evidence Code section 352." (*People v. Clark* (2011) 52 Cal.4th 856, 931 (*Clark*).) "A trial court may exclude evidence under Evidence Code section 352 if its probative value is substantially outweighed by the probability that admission will unduly consume time, create a substantial danger of undue prejudice, confuse the issues, or mislead the jury." (*People v. Mincey* (1992) 2 Cal.4th 408, 439.)

"When determining whether to admit a prior conviction for impeachment purposes, the court should consider, among other factors, whether it reflects on the witness's honesty or veracity, whether it is near or remote in time, [and] whether it is for the same or similar conduct as the charged offense . . . . [Citations.] Additional considerations apply when the proffered impeachment evidence is misconduct other than a prior conviction. This is because such misconduct generally is less probative of immoral character or dishonesty and may involve problems involving proof, unfair surprise, and the evaluation of moral turpitude. [Citation.] . . . '[C]ourts may and should consider with particular care whether the admission of such evidence might involve undue time, confusion, or prejudice which outweighs its probative value.' " (*Clark*, *supra*, 52 Cal.4th at pp. 931-932.)

We review rulings pursuant to Evidence Code section 352 under the abuse of discretion standard (*People v. Hillhouse* (2002) 27 Cal.4th 469, 496), and reverse only if the trial court's ruling was " 'arbitrary, capricious or patently absurd' " and caused a " 'manifest miscarriage of justice.' " (*People v. Rodrigues* (1994) 8 Cal.4th 1060, 1124.) While receiving a stolen vehicle may be a crime of moral turpitude involving dishonesty (see *Alvarez-Reynaga v. Holder* (9th Cir. 2010) 596 F.3d 534, 537 [a conviction for

6

violating § 496d is not categorically a crime of moral turpitude because it does not require a specific intent to deprive a victim of his property permanently]; but see *Robles-Urrea v. Holder* (9th Cir. 2012) 678 F.3d 702, 712 [where categorical approach fails, rely on the facts on which the conviction "necessarily rested" to determine whether it was one involving moral turpitude]), the trial court was within its discretion in concluding a minitrial involving the testimony of four witnesses (the same number of witnesses that testified in defendant's entire trial) on the question of whether Thompson actually committed the crime would have consumed an undue amount of time and created a substantial danger of confusing the issues.

## II.  Proposition 47

Defendant claims we should reduce his conviction for receiving stolen property. (Pen. Code, § 496, subd. (a)—count three.)  He argues that without proof the property he received was valued at more than $950 the crime of receiving stolen property has been reduced to a misdemeanor for eligible offenders such as defendant by the enactment of Proposition 47, his judgment is not yet final, and Proposition 47 applies retroactively. We decline to resentence defendant because we conclude he is limited to the statutory remedy of petitioning the trial court for recall of his sentence.

The passage of Proposition 47 created section 1170.18, which provides for any defendant "currently serving a sentence for a conviction . . . of a felony or felonies who would have been guilty of a misdemeanor under [Proposition 47] had [it] been in effect at the time of the offense [to] petition for a recall of sentence before the trial court that entered the judgment of conviction in his or her case to request resentencing . . ." under the statutory framework as amended by the passage of Proposition 47.  (§ 1170.18, subd. (a); see Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 14, pp. 73-74.)  If a defendant properly seeks recall and resentencing pursuant to section 1170.18, subdivision (a), the trial court must grant resentencing unless, in its discretion, it

7

determines resentencing "would pose an unreasonable risk of danger to public safety." (§ 1170.18, subd. (b).) Among the crimes reduced to misdemeanors by Proposition 47, rendering the person convicted of the crime eligible for resentencing, is receiving stolen property where the property value does not exceed $950. (§ 496, subd. (a); see Voter Information Guide, Gen. Elec. (Nov. 4, 2014) text of Prop. 47, § 9, p. 72.)

As a general rule, when a statute is amended "to reduce the punishment for a particular criminal offense, we will assume, absent evidence to the contrary, that the [enacting body] intended the amended statute to apply to all defendants whose judgments are not yet final on the statute's operative date." (*People v. Brown* (2012) 54 Cal.4th 314, 323, fn. omitted.) However, this rule "is not implicated where the [enacting body] clearly signals its intent to make the amendment prospective, by the inclusion of either an express saving clause or its equivalent." (*People v. Nasalga* (1996) 12 Cal.4th 784, 793.)

In *People v. Yearwood* (2013) 213 Cal.App.4th 161 (*Yearwood*), the court addressed the retroactive application of the Three Strikes Reform Act of 2012 enacted as part of Proposition 36. With the passage of Proposition 36, the three strikes law was amended to remove the provision allowing for the imposition of indeterminate life terms for certain recidivists whose current offenses were not serious or violent felonies. (*Yearwood*, at pp. 167-168.) Like Proposition 47, Proposition 36 enacted a Penal Code provision, section 1170.126, creating a postconviction proceeding for recall and resentencing of a person currently serving a sentence who would have been entitled to a different sentence if Proposition 36 had been in effect when he or she was sentenced. (See *Yearwood*, at p. 168.) The *Yearwood* court held that the recall and resentencing provisions of section 1170.126 "operate[d] as the functional equivalent of a saving clause," demonstrating that "[t]he voters intended for the amendments to [the three strikes law] to operate prospectively only." (*Yearwood*, at p. 168.)

8

We have previously relied on the analysis of *Yearwood* to conclude that a defendant was not entitled to retroactive application of Proposition 47 while the judgment from which he sought relief was on direct appeal. (*People v. Noyan* (2014) 232 Cal.App.4th 657, 672.) Rather, we concluded the defendant in that case was entitled to petition the trial court for a recall of his sentence and resentencing pursuant to section 1170.18 once his judgment was final. (*Noyan*, at p. 672.) In light of the existence of that relief, which too operates as a "functional saving clause" (*Yearwood*, *supra*, 213 Cal.App.4th at p. 168), we conclude, as we did in *Noyan,* that it was the electorate's intent that Proposition 47 be applied prospectively only. Therefore, defendant is not entitled in this appeal to have his felony conviction for receipt of stolen property (§ 496, subd. (a)—count three) redesignated a misdemeanor.

## DISPOSITION

The judgment is affirmed.

         BUTZ         , J.

We concur:

         BLEASE         , Acting P. J.

         HOCH         , J.