Filed 1/21/16  P. v. Johnson CA1/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIRST APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| THE PEOPLE,<br><br>        Plaintiff and Respondent,<br><br>v.<br><br>RICHARD JOHNSON,<br><br>        Defendant and Appellant. | A143352<br><br>(Alameda County<br> Super. Ct. No. 125624A) |

This is an appeal from the denial of a petition for resentencing filed by appellant Richard Johnson under the Three Strikes Reform Act of 2012, otherwise known as Proposition 36.  (Pen. Code, § 1170.126.)[1]  Passed by the electorate in November 2012, "Proposition 36 reduced the punishment to be imposed with respect to some third strike offenses that are neither serious nor violent, and provided for discretionary resentencing in some cases in which third strike sentences were imposed with respect to felonies that are neither serious nor violent."  (*People v. Johnso*n (2015) 61 Cal.4th 674, 679.)  According to appellant, the trial court abused its discretion in denying his petition for resentencing after finding that, if released, he would present an unreasonable risk of danger to public safety.  For reasons that follow, we affirm.

## FACTUAL AND PROCEDURAL BACKGOUND

In 1997, appellant was sentenced under the "Three Strikes" law (§§ 667, subds. (b)-(i), 1170.12) to a term of 33 years to life in state prison after a jury convicted him of

---

[1]        Unless otherwise stated, all statutory citations herein are to the Penal Code.

1

possession of heroin for sale and transportation of heroin, and the trial court then found true allegations that appellant had 13 prior felony convictions within the meaning of section 667.5, subdivision (b).[2] This judgment was subsequently affirmed on appeal. (*People v. Johnson*, A079500 (Nov. 25, 1998) (nonpub. opn.); S075753 (Feb. 17, 1999) (pet. rev. denied).)

After passage of the Three Strikes Reform Act of 2012 (Reform Act), appellant, age 61 and deemed at high medical risk, filed a petition for writ of habeas corpus seeking sentencing relief.[3] The trial court opted to treat appellant's petition as a petition for recall and resentencing pursuant to section 1170.126. Once it was determined that appellant was statutorily eligible for resentencing under this law,[4] the trial court scheduled a

---

[2] The trial court found true the following 13 prior convictions: (1) possession of narcotics for sale in 1986 (Health & Saf. Code, § 11351); (2) grand theft in 1978 (§ 487); (3) burglary in 1972 (§ 459); (4) robbery in 1980 (§ 211); (5) robbery in 1980 (§ 211); (6) robbery in 1980 (§ 211); (7) robbery in 1980 (§ 211); (8) robbery in 1980 (§ 211); (9) robbery in 1980 (§ 211); (10) robbery in 1980 (§ 211); (11) robbery in 1980 (§ 211); (12) mailing threatening communications in 1988 (18 U.S.C., § 876); (13) felon in possession of a firearm in 1988 (18 U.S.C., § 922).

[3] The Reform Act "amended sections 667 and 1170.12 and added section 1170.126 (hereafter the Act). The Act changes the requirements for sentencing a third strike offender to an indeterminate term of 25 years to life imprisonment. Under the original version of the three strikes law a recidivist with two or more prior strikes who is convicted of any new felony is subject to an indeterminate life sentence. The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor. In all other cases, the recidivist will be sentenced as a second strike offender. (§§ 667, 1170.12.) The Act also created a postconviction release proceeding whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.126.)" (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167-168.)

[4] Subdivision (e) of section 1170.126 provides: "An inmate is eligible for resentencing if: [¶] . . . [¶] (2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph

2

hearing for the purpose of assessing the risk of danger appellant's release would pose to public safety, as required under section 1170.126, subdivisions (f) and (g).

At this hearing, which began April 28, 2014, appellant presented several witnesses, as well as documentary evidence consisting of his prison records and letters from family members and members of several community and faith-based organizations. Among these witnesses was Paul Cobb, publisher for POST news group in Oakland, who testified that he intended to offer appellant a job as a columnist and writer for one of his publications after his release from jail.[5] Cobb described appellant as an "excellent writer," and added that his writings would greatly serve the Oakland community because he has the "street credibility" to influence young people to study hard and not be lured by the criminal world's promise of quick money.

Appellant's sister, Yvonne Johnson, testified that she owned a five-bedroom house in Antioch, and that appellant could live there rent free upon his release. She and appellant had stayed in close contact during his incarceration.

The prosecution, in turn, presented California Department of Corrections and Rehabilitation Special Agent Anthony Murphy, an expert in California prison gangs and, in particular, the Black Guerrilla Family gang (BGF). According to Agent Murphy, appellant serves as a captain of BGF, which has members throughout the California and Maryland prison systems, as well as the federal system. Agent Murphy further testified that BGF has adopted a political ideology based on the principles of communism and, traditionally, has endorsed violence as a means to impose discipline on its membership. However, Agent Murphy acknowledged that BGF's current membership is drawn mostly from the older prison population, and that younger gang members, including members of the Crips and Bloods, are much more likely to be involved in violent activities within the

---

(2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12."

[5] The record reflects that appellant has produced many writings, including several relating to his religious beliefs and a book relating to his relationship with his son, entitled, *Life's Journey, A Father's Living Testament*.

prison system than BGF members. In fact, Agent Murphy was unaware of any act of violence committed by the BGF in California prisons in the last 10 years with the exception of one incident in Corcoran State prison, which involved a BGF inmate killing his cellmate, who was also a BGF member.

In addition, Agent Murphy acknowledged that BGF members, who, under former prison policy, were restricted to the Secured Housing Unit (SHU) at Pelican Bay, could now earn placement with the general population — to wit, the prison's least restrictive housing unit – by succeeding under the CDC's "Step Down Program." Thus, Agent Murphy acknowledged that, under current CDC policy, an inmate's status as a BGF member no longer results in the inmate's mandatory placement in the highly-restrictive SHU.

Specifically, in appellant's case, Agent Murphy testified that he was unaware of any act of violence committed by appellant since entering Pelican Bay in 1997, nor of any instance in which appellant had provoked or incited another person to engage in violence during this time. In fact, appellant had received just two notices of violation of prison rules since 1997. The more serious notice, in 2001, was for a "115 prison rule violation" for circumventing the prison mail system. Apparently, appellant attempted to send a letter to his attorney with a request that he forward the letter's contents (relating to BGF associates) to Kenneth Carter, BGF's Supreme Commander. The other notice, in 1997, was identified as a "128-A custodial counseling chrono," a less serious violation resulting from appellant's possession of a document listing inmates and their housing information that he apparently intended to give to another inmate.

Agent Murphy also confirmed that appellant's BGF membership had been validated by the CDC several times since 1997, including most recently in 2012, after he was found in possession of one or more BGF-related newsletters.[6] According to the prison records reviewed by Agent Murphy, appellant had never sought "debriefing" from BGF, a lengthy process by which an inmate disassociates from a gang. Agent Murphy

---

[6] Inmates with validated gang affiliations are reviewed every six years for gang activity.

4

acknowledged, however, that appellant, placed in SHU since entering prison in 1997 due to his gang involvement, was currently under consideration by the CDC for a less restrictive housing placement. Following a recent evaluation, the CDC had assigned appellant a housing classification score of 19 out of 100, the lowest score a prisoner serving a life term could receive and one that generally qualified the prisoner for less-restrictive "level 2" housing.

Finally, Agent Murphy noted appellant's participation in a hunger strike in 2011, which involved thousands of inmates protesting prison housing conditions. He acknowledged, however, there was no evidence appellant acted in a leadership role in this strike.

Following Agent Murphy's testimony, the trial court continued the hearing to permit a mental health expert to be appointed to assess appellant's psychological fitness and level of dangerousness. The court's subsequent appointee, Dr. Daisy Switzer, interviewed appellant for several hours and then prepared a report in which she drew several conclusions.[7] Specifically, Dr. Switzer considered appellant a "pleasant" and "functional" adult, who had spent his time in prison relatively productively by, among other things, writing, mediating disputes within the prison system and meditating. Further, Dr. Switzer considered appellant's risk for committing a violent crime if released was at the "low range of moderate" for the overall prison population. She also opined that, with respect to general recidivism, appellant posed a "moderate risk," and "is as likely as any other paroled multi-termed inmate to commit a future offense." Overall, Dr. Switzer testified, "all of [appellant's] testing fell in the average range," indicating he presented an average risk for reoffending.

In giving these opinions, Dr. Switzer acknowledged that she and appellant did not discuss at length his gang affiliation, and that she did not have any specific information

---

[7] Dr. Switzer had conducted at least 417 risk assessment reports on life term inmates for, among others, the Board of Parole, individual inmates, and court officers. She utilized several assessment methods, including the Hare Psychopathy Index, the HCR-20 assessment and the Global Assessment of Functioning. She also reviewed appellant's prison and other legal records, as well as Agent Murphy's report in this matter.

5

on BGF. However, they did briefly touch on these subjects during the interview, with appellant telling Dr. Switzer that his involvement with BGF was best described as "being politically aware and caring about equality and justice." Appellant also told Dr. Switzer he was in the process of "learning about myself. I'm a decent person. I made errors, but I'm a decent person. I have insight and ability to be true to myself and thoughts, beliefs and lifestyle." Appellant added that, with age, he had learned to keep himself positive and to not go in "that direction [of violence]." Instead, appellant reported that he would like to go back to school and to mentor others. Dr. Switzer believed appellant was being sincere in telling her these things.

After listening to Dr. Switzer's testimony, the trial court expressed dissatisfaction, referring to her assessments as "naïve in the approach" and too accepting of appellant's statements at face value. Then, after taking the matter under submission, the trial court denied appellant's petition for resentencing in a written order issued on September 5, 2014.

Just before the court's ruling was announced, defense counsel advised the court that the CDC had recently determined appellant qualified as an "inactive monitored inmate" and "should be removed from the SHU and placed in Step 5 [of the Step Down Program], which is the least secure level of the case by case review process so that he will be forthwith released to general population [at Sacramento State Prison]." The trial court accepted defense counsel's statements and agreed to attach the prison record as an exhibit to the case file. Nonetheless, the trial court found that appellant "remains unchanged" in his commitment to a criminal lifestyle (including his commitment to BGF, a gang that endorsed violence as a disciplinary tool). The court also found there was nothing in the record to demonstrate that "[appellant], if released, would not return to his life of crime. In sum, [appellant's] past criminal history; his continued membership and high ranking leadership role in the BGF; his lack of insight into his criminal history, the commitment offense, and his gang membership; his lack of programming; [fn. omitted] his lack of marketable skills; and his weak parole plans, all prove and demonstrate by a preponderance of the evidence that [appellant] continues to pose a current and ongoing

6

unreasonable risk of danger to public safety."  Appellant's timely appeal of the trial court's adverse ruling followed.

## DISCUSSION

The sole legal contention raised on appeal is that the trial court abused its discretion in denying appellant's petition for resentencing under the Reform Act.  The Reform Act provides that, where, as here, a petitioner is statutorily eligible for relief, "the petitioner shall be resentenced . . . unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety." (§ 1170.126, subd. (f).)  The prosecution bears the burden of proving the petitioner would pose such risk of danger by a preponderance of the evidence.  (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1301 (*Kaulick*).)

"In exercising its discretion in subdivision (f) [of section 1170.126], the court may consider:  [¶] (1) The petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; [¶] (2) The petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) Any other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety."  (§ 1170.126, subd. (g).)

Generally, where a trial court's sentencing decision is under review for abuse of discretion, "we are guided by two fundamental precepts.  First, ' " '[t]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review.' " ' [Citations.]  Second, a ' " 'decision will not be reversed merely because reasonable people might disagree.  "An appellate tribunal is neither authorized nor warranted in substituting its judgment for the judgment of the trial judge." ' " ' [Citations.]  Taken together, these precepts establish that a trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it."  (*People v. Carmony* (2004) 33

7

Cal.4th 367, 376-377 [a trial court's decision not to dismiss or strike a sentencing allegation under the Three Strikes Law is reviewed for abuse of discretion].)

However, we must keep in mind "[t]he superior court's order [i]s subject to review for *abuse of discretion*. This standard is *deferential*. [Citations.] But it is not empty. Although variously phrased in various decisions [citation], it asks in substance whether the ruling in question '*falls outside the bounds of reason*' under the applicable law and the relevant facts [citations]." (*People v. Williams* (1998) 17 Cal.4th 148, 162, italics added.)

The trial court's underlying factual findings, in turn, are reviewed for substantial evidence, meaning evidence that is reasonable, credible, and of solid value such that a reasonable trier of fact could make those factual findings by a preponderance of the evidence. (Cf. *People v. Bolin* (1998) 18 Cal.4th 297, 331.) A "trial court abuses its discretion when factual findings critical to its decision find no support in the evidence." (*People v. Cluff* (2001) 87 Cal.App.4th 991, 998. See also *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497, 531.)

Returning to the case at hand, and having considered the record in a light most favorable to affirming the trial court's decision, we conclude several facts relied upon by the trial court in denying appellant's petition for resentencing are indeed probative of the central issue before us – to wit, whether he currently poses an unreasonable threat to public safety. (§ 1170.126, subd. (f).) Among these probative facts is appellant's by-all-means lengthy criminal history, which includes eight robberies, grand theft and multiple drug offenses. While this criminal history, standing alone, may not support the trial court's finding of current dangerousness, there are other, more troubling facts in the record. Most significant, we conclude, is appellant's involvement and leadership role in BGF. As the People note, Agent Murphy, an undisputed expert in California prison gangs, testified regarding BGF's promotion of violence as a tool to impose discipline on its members, a fact reflected in the BGF Oath. And while appellant insists BGF is "largely defunct," with an aging membership much less likely than other prison gang memberships to commit or incite violence, there is evidence suggesting otherwise. Agent

8

Murphy testified without contradiction that BGF remains an active gang whose members were involved in at least one violent incident (homicide) in a California prison this decade.

And, more importantly, the evidence suggests appellant remains an active member of BGF. The CDC has routinely validated appellant's BGF involvement during his prison term, including as recently as 2012, when it was noted appellant had been found in possession of one or more BGF-related newsletters. While appellant accurately states there is no evidence he has committed any violent act on behalf of BGF during his incarceration, or encouraged anyone else to do so, his 1997 rules violation does appear linked to his gang membership. Specifically, the record reflects that appellant was found to have circumvented the prison mail system by delivering a letter to his attorney with the instruction to forward the letter's contents to the Supreme Commander of BGF. In addition, Agent Murphy testified that appellant has at no point during his incarceration availed himself of the opportunity to "debrief" or disassociate from BGF, a fact not disputed by appellant. Rather, in apparent disregard of the gang's historic violent associations, appellant described his involvement with BGF to Dr. Switzer as "being politically aware and caring about equality and justice."

In pointing to this evidence, we acknowledge there are several other factors weighing in favor of granting appellant's petition. Among other things, the record reflects that appellant, in addition to refraining from violence, has engaged in such worthy pursuits during his incarceration as writing, mentoring juveniles, meditating, and meditating disputes among fellow inmates. We commend appellant for his rehabilitative efforts in these regards. Further, we agree with appellant that this evidence, as well as other undisputed evidence, tends to undermine the trial court's findings that he remains "unchanged," has gained no insight into his criminal behavior, and has "weak" parole plans. To the contrary, the record reflects appellant has a job in journalism waiting for him at a respected local news organization, as well as a rent-free place to live with his sister.

9

Nonetheless, on appeal, the law requires us to affirm the trial court's exercise of discretion unless it is demonstrated to be irrational or arbitrary. (See *People v. Carmony, supra*, 33 Cal.4th at pp. 376-377 [in the absence of a showing that the ruling was irrational or arbitrary, "the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination . . . will not be set aside on review"].)[8] And, here, considering the record as a whole in a light most favorable to the challenged ruling, we conclude the trial court had a reasonable basis to find appellant has failed to gain sufficient insight into his criminal lifestyle and gang involvement, such that he remains a current danger to public safety. (See *People v. Zichwic* (2001) 94 Cal.App.4th 944, 961.) As stated above, the governing statutory scheme grants the trial court discretion to determine "that resentencing the petitioner would pose an unreasonable risk of danger to public safety" (§ 1170.126, subd. (f)), and, in exercising this discretion, to rely on factors such as the "(1) [t]he petitioner's criminal conviction history . . . , the length of prior prison commitments, . . . [¶] (2) [t]he petitioner's disciplinary record and record of rehabilitation while incarcerated; and [¶] (3) *[a]ny other evidence the court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety*." (§ 1170.126, subd. (g), italics added.) The trial court in this case complied with these mandates. Because the trial court relied on multiple appropriate factors, including

---

[8] As appellant points out, the trial judge, before ruling, voiced his lack of confidence in "the intelligence level of the electorate" and, in particular, his personal disagreement with the electorate's decision to change the Three Strike Law by passing Proposition 36. The expression of such an opinion in open court, regarding the wisdom of the electorate's decision to pass a particular law, could be regarded by a reasonable person as indicating the court was " 'guided solely by a personal antipathy for the effect that the [applicable] law would have on [a] defendant,' " rather than legitimate factors such as the " 'defendant's background,' 'the nature of his present offenses,' and other 'individualized considerations.' " (*Romero, supra,* 13 Cal.4th at p. 531.) It goes without saying a trial judge that renders a decision guided solely by "personal antipathy" would commit a clear abuse of discretion. (*Ibid*.) However, we do not lightly presume the trial judge was so wrongly guided, particularly where, as here, the record otherwise supports the court's decision.

appellant's criminal history and ongoing gang allegiance and involvement, indicating his unsuitability for resentencing, and because these factors provide substantial evidence that appellant *currently* poses an unreasonable risk to public safety, there is no basis for reversal. (*People v. Carmony, supra*, 33 Cal.4th at p. 377; see also *People v. Myers* (1999) 69 Cal.App.4th 305, 310 [an appellate court must affirm even if it "might have ruled differently in the first instance"].)[9] The order denying appellant's petition for resentencing is thus affirmed.

## DISPOSITION

The trial court order of September 5, 2014, is affirmed.

_____
Jenkins, J.

We concur:

_____
McGuiness, P. J.

_____
Pollak, J.

*People v. Richard Johnson*, A143352

---

[9] We decline to consider appellant's related argument, raised for the first time in his reply brief, that the trial court erred by failing to apply in his case the definition of "unreasonable risk of danger to public safety" set forth in section 1170.18, subdivision (c), to wit, statutory language added by Proposition 47, which was approved by the electorate in November 2014. It goes without saying that arguments so raised are generally waived on appeal. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764 [" 'Points raised for the first time in a reply brief will ordinarily not be considered, because such consideration would deprive the respondent of an opportunity to counter the argument' "].)