Filed 2/19/16  P.v. Santos CA3

NOT TO BE PUBLISHED

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | C075131 |
| v. | (Super. Ct. No. 03F6857) |
| TIMOTHY MARVIN SANTOS, | |
| Defendant and Appellant. | |

Voters approved Proposition 36, the Three Strikes Reform Act of 2012 (the Act), in November 2012.  Soon after the Act went into effect, defendant Timothy Marvin Santos, an inmate serving an indeterminate life sentence imposed under the three strikes law (Pen. Code, §§ 667, subds. (b)-(i), 1170.12)[1] for a crime that is not a serious or

---

[1] Undesignated statutory references are to the Penal Code.

1

violent felony, petitioned the trial court to recall his sentence and for resentencing under the Act. Section 1170.126, which the Act added to the Penal Code, authorizes such a petition for an inmate who is eligible for resentencing under subdivision (e) of section 1170.126, unless the trial court determines that resentencing would pose an unreasonable risk of danger to public safety. (§ 1170.126, subd. (f).) The trial court denied defendant's petition because it concluded that resentencing defendant would pose an unreasonable risk of danger to public safety.

Defendant now contends the trial court abused its discretion in denying his petition because (1) the complete facts of his pre-2003 crimes were not before the trial court; (2) the trial court did not order a psychological assessment to aid it in evaluating defendant's insight into his prior crimes and defendant's risk to public safety; and (3) the trial court failed to articulate a rational nexus between the factors it considered and defendant's then-current public safety risk.

We conclude the trial court had the discretion to consider any evidence it determined was relevant in deciding whether resentencing defendant would pose an unreasonable risk of danger to public safety. Section 1170.126 does not require the trial court to hear all of the mitigating and aggravating facts related to defendant's prior convictions. In addition, section 1170.126 did not require the trial court to order a psychological assessment of defendant, and the trial court's stated reasons for denying defendant's petition are rationally related to defendant's then-current public safety risk. We will affirm the trial court's order.

BACKGROUND

Law enforcement officers found marijuana and chemicals associated with the manufacture of methamphetamine in the truck defendant was driving. Defendant boasted to an officer about making methamphetamine. He said he had been manufacturing methamphetamine at his house. Officers found chemicals, 13.3 grams of marijuana bud,

2

and drug paraphernalia during a search of defendant's house. Defendant lived with his girlfriend and her three minor children.

A jury convicted defendant of possession of a substance with the intent to manufacture methamphetamine (Health & Saf. Code, § 11383, subd. (c)(1)), conspiracy to manufacture methamphetamine (§ 182, subd. (a)(1); Health & Saf. Code, § 11379.6), possession of an injecting or smoking device (Health & Saf. Code, § 11364), possession of a hypodermic needle without a permit (Bus. & Prof. Code, § 4140), possession of marijuana while driving (Veh. Code, § 23222, subd. (b)), and child endangerment (§ 273a, subd. (b)). The trial court found true the enhancement allegations regarding prior convictions and prior prison terms, and sentenced defendant to state prison for an aggregate term of 36 years to life. This court affirmed the judgment and the California Supreme Court denied review. A remittitur issued on November 21, 2008.

Defendant filed a petition to recall his sentence pursuant to section 1170.126 on January 7, 2013, shortly after the voters approved Proposition 36. The judge who presided over defendant's trial heard defendant's section 1170.126 petition. It was undisputed that defendant was eligible for resentencing under the Act. The issue before the trial court was whether resentencing defendant would pose an unreasonable risk of danger to public safety. (§ 1170.126, subds. (f) and (g).) The trial court reviewed the documents subpoenaed by the People from the California Department of Corrections and Rehabilitation (the prison packet) and a supplemental probation report. Defendant testified at the hearing on his petition.

The records before the trial court showed defendant had a juvenile record dating back to 1980. Defendant was adjudicated of committing the following offenses as a juvenile: receiving stolen property (§ 496) in 1980; petty theft (§ 488) in 1981; possession of concentrated cannabis (Health and Saf. Code, § 11357, subd. (a)) in 1981; grand theft (§ 487) in 1982; driving a motorcycle, motor-driven cycle, or motorized bicycle upon a highway without a license (Veh. Code, § 12500, subd. (b)) and lack of

3

vehicle registration (*id.* at § 4454, subd. (a)) in 1982; possession of concentrated cannabis (Health and Saf. Code, § 11357, subd. (a)) in 1982; violating a court order in 1983; possession of an alcoholic beverage by a minor in a public place or place open to the public (Bus. & Prof. Code, § 25662, subd. (a)) in 1983; being under the influence in a public place (§ 647, subd. (f)) in 1983; one count of burglary (§ 459) in 1984; and two counts of burglary (§ 459) in 1985.

Defendant was convicted of assault with a firearm (§ 245, subd. (a)(2)), his first strike offense, in 1985. He received three years' probation and 270 days in jail. He was convicted of a second strike offense in 1988, for willful infliction of corporal injury to a spouse (§ 273.5) and personally using a deadly weapon in the commission of a felony (§ 12022, subd. (b)). He received a three-year prison term for the 1988 conviction. And in 1994, he was convicted of the following offenses: manufacture of a controlled substance (Health and Saf. Code, § 11379.6, subd. (a)); violation of or conspiracy to violate Health and Safety Code section 11379.6 in relation to specified quantities of methamphetamine or phencyclidine (*id.* at § 11379.8); sale of a controlled substance (*id.* at § 11379, subd. (a)); possession for sale of a controlled substance (*id.* at § 11378); and opening or maintaining a place for the purpose of unlawfully selling a controlled substance (*id.* at § 11366). Defendant was sentenced to 10 years eight months in state prison for the 1994 convictions. (Defendant claimed his sentence was 11 years, not 10 years eight months.)

The records before the trial court also showed that defendant received numerous write ups or disciplinary actions while in custody. Shasta County Detention Facility records show the following dates and rules violations by defendant: (1) April 1, 2004 -- failure to follow orders to lock down and attempt to start a riot; (2) April 18, 2005 -- failure to follow orders to lock down; (3) August 26, 2005 -- possession of contraband (ball point pen); (4) December 20, 2005 -- possession of contraband (bottle containing suspected pruno, an alcoholic beverage made in jail or prison using prunes, sugar and

4

juice; (5) January 12, 2006 -- possession of pruno; (6) February 28, 2006 -- failure to lock down; (7) March 6, 2006 -- engaging in a physical altercation with another inmate; (8) May 19 & 20, 2006 -- possession of pruno; (9) December 25, 2006 -- manufacture of pruno; (10) January 14, 2007 -- being under the influence of alcohol; (11) February 10, 2007 -- possession of extra clothing; (12) May 6, 2007 -- being disrespectful to jail staff; (13) May 12, 2007 -- being intoxicated and possession of pruno.

There were three disciplinary actions against defendant in state prison. Approximately three gallons of pruno and two cell phones concealed in a book were found in defendant's cell on January 13, 2011. Defendant admitted the pruno and cell phones belonged to him. He was found guilty of possessing cellular phones and inmate manufactured alcohol. Defendant admitted at the section 1170.126 hearing that although he was only caught with pruno in prison one time, he continued to make pruno in prison. Defendant was found in possession of another cell phone and an altered cell phone charger on February 18, 2011. He was found guilty of possession of a cell phone.

Defendant testified he was a drug addict. The probation report stated that defendant began smoking marijuana in 1978 when he was 12 years old, and he smoked and sold marijuana until 1988. But methamphetamine was defendant's drug of choice, and defendant used and sold methamphetamine prior to 1989 and after he was released on parole in 1990. The probation report also stated that defendant was a self-reported alcoholic. Defendant admitted he never received any treatment for his drug addiction. He said he was in a program called "A Life Without a Crutch" when he was in prison but did not complete the program, and he participated in a program called "Empire" for 30 days when he was out of custody.

Defendant testified at the section 1170.126 hearing about his 1985 conviction for assault with a firearm. He said he was a "kid" at the time of the crime. He and others "stole some pot from some Indians and there was an ongoing war between . . . [his group] and the Indian." Defendant claimed five people followed defendant to beat him up.

5

Defendant said he shot in the air at a car to scare them away, and he was not trying to hurt anyone.

With regard to his 1988 conviction for corporal injury to a spouse and personal use of a deadly weapon, defendant testified that he used an axe handle to "beat up the house and . . . vandalize . . . [his] own personal property." Defendant denied that he hit his wife with the ax handle. He said he entered a plea agreement admitting he committed corporal injury upon his wife and he was "stuck" with that plea agreement.

Defendant admitted possessing and transporting methamphetamine in 1994, but he denied manufacturing or intending to sell methamphetamine. Defendant also denied that he manufactured methamphetamine in relation to the current convictions. He said he possessed materials for the manufacture of methamphetamine but "[i]t was miniscule amounts."

Defense counsel argued that defendant did not have "any significant record" of disciplinary action in prison even though he was in the highest security level "with the worst of the bad guys." Defense counsel also argued that some of defendant's serious crimes were remote in that they were committed in 1985 or 1988.

The prosecutor argued defendant's criminal history was not remote because defendant committed the 1994 crimes and received an 11-year prison sentence when he had just served a prison sentence for the 1988 domestic violence incident, and he committed new crimes when he was on parole or had just completed parole for the 1994 crimes. The prosecutor said defendant had endangered the safety of his wife and children and the public by manufacturing methamphetamine in his home, and his attitude about his dangerous conduct at his trial was disrespectful and nonchalant. The prosecutor further argued that defendant lacked insight into his criminal behavior as he still did not believe he was guilty of the crimes for which he was convicted. The prosecutor also pointed to defendant's juvenile delinquency history, efforts to minimize his misconduct

6

in jail, failure to conform his conduct to institutional requirements, and failure to complete or seek participation in an Alcoholics or Narcotics Anonymous program.

The trial court denied defendant's petition. The trial judge said, "Given the totality of the circumstances -- First of all, let me state: I'm not reluctant to -- to wipe out a third strike and resentence. Not at all. And we've had quite a number of these 1170.126 petitions, quite a few of them, as a matter of fact. And in many instances, the People have agreed to resentencing and the court has resentenced parties. And obviously, the court's not reluctant to resentence over the objection of the People. The court makes its own independent judgments here pursuant to subsection G. [¶] I have to say I agree wholeheartedly with the comments offered by [the prosecutor] Mr. Woods. I think -- I'm surprised and disappointed with the continued lack of respect Mr. Santos has for authority even after having been incarcerated. Today, his statements under oath reflect a failure to acknowledge the wrongfulness, I think, of his criminal acts for which he's already been convicted." The trial court noted defendant's lack of remorse for or denial of the conduct for which he was convicted. The trial judge further observed, "His prison record is not exemplary; I would hope to see that in a case where I'm resentencing pursuant to 1170.126. He's been involved in altercations, repeatedly used controlled substances, pruno . . . . While in prison, he's possessed cell phones, he has not been cooperative with authorities when in prison or while authorities in prison are investigating his -- his in prison misconduct. And he does have an extensive record outside of prison. [¶] So, I feel uncomfortable in releasing him earlier than the sentence I already imposed. I feel uncomfortable that he would, based on all these factors, continue to pose unreasonable risk of harm to public safety."

STANDARD OF REVIEW

We review a trial court's section 1170.126, subdivision (g) finding for abuse of discretion. (§ 1170.126, subds. (f), (g) [the trial court has the discretion to make dangerousness finding and to consider any evidence it deems relevant in making that

7

finding]; see generally *In re Richard E*. (1978) 21 Cal.3d 349, 354 [an exercise of discretion will not be disturbed on appeal unless abused].)  As the party challenging the trial court's order, the defendant bears the burden of clearly showing that the order was irrational or arbitrary.  (*People v. Carmony* (2004) 33 Cal.4th 367, 376.)  Absent that showing, we presume the trial court acted properly.  (*Id.* at pp. 376-377.)  We will not reverse the trial court's decision merely because reasonable people might disagree. (*Id.* at p. 377.)  The trial court does not abuse its discretion unless its decision is so irrational or arbitrary that no reasonable person could agree with it.  (*Ibid.*)

Defendant contends we must review the trial court's order under a dual standard consisting of abuse of discretion and "some evidence" of current dangerousness, as used when we review the decision of the Board of Parole Hearings or the Governor to deny an inmate parole.  (*In re Lawrence* (2008) 44 Cal.4th 1181, 1191 [the standard of review in parole determination cases is whether "some evidence" supports the conclusion of the Board of Parole Hearings or the Governor that the inmate is unsuitable for parole because he or she is currently dangerous].)  We disagree that the "some evidence" standard of review applies to our review.

"Whether to grant parole to an inmate serving an indeterminate sentence is a decision vested in the executive branch, under our state Constitution and statutes.  The scope of judicial review is limited.  The 'some evidence' standard . . . is meant to serve the interests of due process by guarding against arbitrary or capricious parole decisions, without overriding or controlling the exercise of executive discretion."  (*In re Shaputis* (2011) 53 Cal.4th 192, 198-199.)  While the ultimate conclusion on parole suitability is subject to judicial review, that review is narrower in scope than appellate review of a lower court's judgment.  (*Id.* at p. 215.)  As defendant acknowledges, the review of a trial court's denial of a section 1170.126 petition does not implicate separation of powers issues which are present in the review of parole suitability determinations by the

executive branch. The highly deferential "some evidence" standard of review is inappropriate for our review of the trial court's exercise of discretion in this case.

DISCUSSION

I

Defendant argues the trial court abused its discretion in denying his section 1170.126 petition because the "complete facts" of his pre-2003 crimes were not before the trial court.

We begin our discussion with an overview of the Act. The California electorate approved the Act, amending sections 667 and 1170.12 and adding section 1170.126, during the November 6, 2012 general election. (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167 (*Yearwood*).) The Act became effective the next day. (*Id.* at pp. 167, 169.) The amendments to sections 667 and 1170.12 changed the requirements for sentencing a third strike offender to an indeterminate prison term of 25 years to life. (*Yearwood,* at p. 167.) Prior to the Act, a defendant with two prior serious or violent felony convictions would be subject to a 25-year-to-life sentence under the three strikes law upon conviction of any new felony. (*Id.* at pp. 167-168.) "The Act diluted the three strikes law by reserving the life sentence for cases where the current crime is a serious or violent felony or the prosecution has pled and proved an enumerated disqualifying factor. In all other cases, the recidivist will be sentenced as a second strike offender." (*Ibid.*)

The Act also "created a postconviction release proceeding [in section 1170.126] whereby a prisoner who is serving an indeterminate life sentence imposed pursuant to the three strikes law for a crime that is not a serious or violent felony and who is not disqualified, may have his or her sentence recalled and be sentenced as a second strike offender unless the court determines that resentencing would pose an unreasonable risk of danger to public safety." (*Yearwood, supra*, 213 Cal.App.4th at p. 168.) To obtain a sentencing reduction under section 1170.126, an inmate must file a petition for a recall of sentence in the trial court that entered the judgment of conviction in his or her case by

9

November 7, 2014, or at a later date upon a showing of good cause. (§ 1170.126, subd. (b).) "Upon receipt of such a petition, the trial court must determine if it satisfies the criteria contained in subdivision (e) of section 1170.126. [Citation.] If it does, the [petitioner] shall be resentenced as a second strike offender 'unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' [Citation.]" (*Yearwood, supra*, 213 Cal.App.4th at p. 170.)

A key purpose of the Act is to enhance public safety. (*People v. Osuna* (2014) 225 Cal.App.4th 1020, 1036-1038 (*Osuna*); *Yearwood, supra*, 213 Cal.App.4th at pp. 171, 175 [ballot arguments for Proposition 36 focused on keeping dangerous and violent criminals in prison].) The proponents of Proposition 36 were concerned about keeping dangerous criminals and violent repeat offenders off the streets. (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) argument in favor of Prop. 36, p. 52.) The proponents of Proposition 36 said, "Criminal justice experts and law enforcement leaders carefully crafted Prop. 36 so that truly dangerous criminals will receive no benefits whatsoever from the reform." (*Ibid.*) The ballot materials "expressly distinguished between dangerous criminals who were deserving of life sentences, and petty criminals (such as shoplifters and those convicted of simple drug possession) who posed little or no risk to the public and did not deserve life sentences. It is clear the electorate's intent was not to throw open the prison doors to all third strike offenders whose current convictions were not for serious or violent felonies, but only to those who were perceived as nondangerous or posing little or no risk to the public." (*Osuna, supra*, 225 Cal.App.4th at p. 1038, italics omitted.)

The Act does not define "unreasonable risk of danger to public safety."[2] Instead, it gives a trial court discretion to make the dangerousness determination. (§ 1170.126,

---

[2] Defendant does not contend that the definition of "unreasonable risk of danger to public safety" in section 1170.18, which the voters added to the Penal Code when they

10

subd. (f).) The Act provides that in exercising its discretion under section 1170.126, the trial court may consider (1) the petitioner's criminal conviction history, including the type of crimes committed, the extent of injury to victims, the length of prior prison commitments, and the remoteness of the crimes; (2) the petitioner's disciplinary record and record of rehabilitation while incarcerated; and (3) any other evidence the trial court, within its discretion, determines to be relevant in deciding whether a new sentence would result in an unreasonable risk of danger to public safety. (§ 1170.126, subd. (g).)

In sum, section 1170.126 entrusts the trial court with the discretion to deny resentencing if the trial court determines that resentencing would pose an unreasonable risk of danger to public safety. (*Yearwood, supra*, 213 Cal.App.4th at p. 176.) In such a case, the petitioner must finish out the term to which he or she was originally sentenced. (*People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1303 (*Kaulick*).)

Defendant claims the trial court was required to consider all of the mitigating and aggravating facts of his prior crimes in order to determine whether he posed a current public safety risk. But his argument is contrary to the language of section 1170.126.

Our primary task in construing a statute adopted by voter initiative is to ascertain the intent of the electorate so as to effectuate the purpose of the law. (*People v. Jones* (1993) 5 Cal.4th 1142, 1146 (*Jones*); *Osuna, supra,* 225 Cal.App.4th at p. 1034.) To determine intent, we turn first to the words of the statute. (*Jones, supra*, 5 Cal.4th at p. 1146.) When the language of a statute is clear and unambiguous, there is no need for construction. (*Ibid.*; *Osuna, supra,* 225 Cal.App.4th at p. 1034.)

---

approved Proposition 47 on November 4, 2014, applies retroactively to this case, and we do not decide that issue. The California Supreme Court has granted review in cases involving whether Proposition 47's definition of "unreasonable risk of danger to public safety" applies to resentencing under section 1170.126. (*People v. Chaney,* review granted Feb. 18, 2015, S223676; *People v. Valencia,* review granted Feb. 18, 2015, S223825.)

Section 1170.126 uses the terms "shall" and "may." For example, it provides that the trial court shall determine whether a petitioner is eligible for resentencing under section 1170.126, subdivision (e). (§ 1170.126. subd. (f).) And a trial court may consider factors including the petitioner's criminal conviction history, disciplinary record, and record of rehabilitation while incarcerated. (§ 1170.126, subd. (g).) "When the Legislature has . . . used both 'shall' and 'may' in close proximity in a particular context, we may fairly infer the Legislature intended mandatory and discretionary meanings, respectively. The ordinary import of 'may' is a grant of discretion." (*In re Richard E.*, *supra*, 21 Cal.3d at pp. 353-354.) The use of the term "discretion" in conjunction with the term "may" also supports our conclusion that section 1170.126, subdivision (g) gives a trial court an option, and not a mandate, to consider certain factors. Looking at the words of section 1170.126, we conclude the statute does not require a trial court to consider all of the facts of a petitioner's prior crimes. Instead, a trial court has the discretion to consider any evidence it determines is relevant in making the dangerousness determination. (§ 1170.126, subd. (g).)

Our construction is consistent with the indicia of voter intent in the Voter Information Guide for Proposition 36. The Guide states, "In determining whether an offender poses such a risk, the court could consider any evidence it determines is relevant, such as the offender's criminal history, behavior in prison, and participation in rehabilitation programs." (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) analysis by the legislative analyst, p. 50.) The Guide indicates the voters intended to grant the trial court discretion to decide what evidence to consider in evaluating the risk of modifying a petitioner's sentence.

In any event, the record shows the trial court was aware of the section 1170.126, subdivision (g) factors, and it considered factors other than defendant's criminal history in making its dangerousness determination. The trial judge considered defendant's in-custody record and continued lack of respect for authority. Defendant's "prison packet"

showed numerous rules violations by defendant in jail and in prison. Defendant does not contend that the evidence of his institutional disciplinary record and record of rehabilitation while incarcerated was inadequate.

Defendant fails to demonstrate prejudicial error.

## II

Defendant next argues the trial court abused its discretion in denying his petition because the trial court did not order a psychological assessment to aid it in evaluating defendant's insight into his prior crimes and risk to public safety. Defendant cites section 2240 of title 15 of the California Code of Regulations and section 1369 in support of his claim.

Section 2240 of title 15 of the California Code of Regulations relates to comprehensive risk assessments prepared for parole suitability determinations. Subdivision (a) of the section states, "Prior to a life inmate's initial parole consideration hearing, a Comprehensive Risk Assessment will be performed by a licensed psychologist employed by the Board of Parole Hearings, except as provided in subsection (g)." (Cal. Code Regs., tit. 15, § 2240, subd. (a).)

Section 1369 relates to a defendant's present mental competence to stand trial. Section 1369, subdivision (a) provides that the trial court shall appoint a psychiatrist or licensed psychologist, and any other expert the court may deem appropriate, to examine the defendant in order to evaluate, among other things, the defendant's ability or inability to understand the nature of the criminal proceedings and assist counsel in the conduct of a defense in a rational manner. Defendant's mental competency was not at issue at the section 1170.126 proceeding, and he did not ask the trial court to order a psychological assessment.

The authorities cited by defendant do not reference postconviction sentence recall proceedings under section 1170.126. Defendant does not cite, and we have not found, any authority requiring psychological evaluations to be prepared for a section 1170.126

13

proceeding. The Act and the Voter Information Guide for Proposition 36 do not mention psychological assessments and certainly do not impose the sua sponte duty defendant advocates. (Voter Information Guide, Gen. Elec. (Nov. 6, 2012) pp. 48-51, 105-110.)

The trial court had evidence of defendant's insight into his prior criminal behavior, namely defendant's testimony about his past crimes. As the trial court found, defendant failed to acknowledge the wrongfulness of his prior criminal acts. As for defendant's current risk to public safety, the trial court had evidence of and considered defendant's criminal history, in-custody record, and present attitude toward his prior crimes and law enforcement authority. The trial court had discretion under section 1170.126 to decide what evidence was relevant in deciding whether resentencing would result in an unreasonable risk of danger to public safety. (§ 1170.126, subd. (g).)

Section 1170.126 does not require the trial court to order a psychological assessment of defendant.

### III

Defendant also argues the trial court abused its discretion in denying his petition because the trial court failed to articulate a rational nexus between the factors it considered and defendant's then-current public safety risk. Defendant cites parole determination cases in support of his claim that the trial court was required to articulate how the factors it considered rendered defendant currently dangerous.

Although we do not decide how and to what extent parole determination cases control our review of section 1170.126 orders,[3] we agree with defendant that there must

---

[3] Unlike the language indicating discretion in section 1170.126, subdivision (g), the regulations governing parole decisions enumerate the factors which the Board of Parole Hearings must consider in determining suitability for parole. (Contra, § 1170.126, subd. (g) with Cal. Code Regs., tit. 15, § 2281, subd. (b).) "Such information shall include the circumstances of the prisoner's: social history; past and present mental state; past criminal history, including involvement in other criminal misconduct which is reliably documented; the base and other commitment offenses, including behavior before,

be a connection between the factors the trial court considered and defendant's current dangerousness because as we have explained, a key purpose of the Act is to enhance public safety. (*Yearwood, supra*, 213 Cal.App.4th at p. 171, 175-176.) Here, the trial court stated its reasons for determining that resentencing defendant would pose an unreasonable risk of danger to public safety, and the reasons involve factors that the electorate approved for making a dangerousness determination under section 1170.126. The trial court's reasons for denying defendant resentencing are rationally connected to defendant's current public safety risk.

The trial court considered defendant's "extensive record outside of prison." Defendant has a criminal history dating back to 1980 when he was 13. He had at least one juvenile adjudication each year from 1980 to 1985, his juvenile adjudications included three counts of burglary (§ 459), and he was convicted of his first felony in 1985 when he was 18 years old. That felony involved the personal use of a firearm. Defendant suffered his second felony conviction, involving corporal injury to a spouse, three years later. He was committed to state prison for three years as a result of that conviction. But defendant reoffended in 1994 when he committed drug related offenses, including manufacture of methamphetamine, for which he received a substantial prison sentence. Despite his numerous prior adjudications and convictions and having received a substantial prison sentence for his 1994 convictions, defendant committed the current drug-related offenses in 2003. A defendant's past criminal conduct can evince present or

---

during and after the crime; past and present attitude toward the crime; any conditions of treatment or control, including the use of special conditions under which the prisoner may safely be released to the community; and any other information which bears on the prisoner's suitability for release." (Cal. Code Regs., tit. 15, § 2281, subd. (b).) A gubernatorial parole decision must be based upon the same factors that the Board of Parole Hearings is required to consider. (*In re Rosenkrantz* (2002) 29 Cal.4th 616, 660-661.)

future danger. (§ 1170.126, subd. (g)(1) [the trial court may consider the petitioner's criminal conviction history].)

Defendant argues his 1985 and 1988 convictions were remote and were not probative of his current dangerousness. However, the trial judge also considered the information in defendant's prison packet, which showed defendant's post-2003 conviction attitude and behavior. While defendant received good reports from his prison work supervisor in 2010, 2011, and 2012, he committed numerous institutional rules violations. He was involved in a physical altercation in jail, found in possession of cell phones, pruno or other contraband in jail and in prison, and he failed to comply with the directives of jail officials. He was disciplined on two occasions in 2011 for possession of a cell phone, which is a serious rule violation. (Cal. Code Regs., tit. 15, § 3315, subd. (a)(3)(X).) Despite prior disciplinary actions related to pruno while at the Shasta County Detention Facility, defendant persisted in making pruno when he was in state prison and he was disciplined in 2011 for possession of pruno. The trial judge found that defendant displayed a "continued lack of respect . . . for authority even after having been incarcerated." The record also shows that while he admitted he was an alcoholic and a methamphetamine addict, there was no evidence defendant had sought to address his addictions. Defendant's in-custody conduct and failure to address his substance abuse issues are rationally related to his present dangerousness. (§ 1170.126, subd. (g)(2) [the trial court may consider the petitioner's disciplinary record and record of rehabilitation while incarcerated]; *Kaulick, supra*, 215 Cal.App.4th at p. 1293, fn. 10 [when a petition for resentencing is filed many years after the defendant was sentenced, the petitioner's conduct in the interim may be extremely relevant to a determination of whether a lesser sentence is appropriate].) Further, defendant still failed to take responsibility for his criminal acts. Lack of remorse could also be probative of a likelihood to repeat criminal conduct under similar circumstances. (*People v. Key* (1984) 153 Cal.App.3d 888, 900.)

16

The record supports the trial court's findings.  Defendant's criminal history, postconviction disciplinary record, failure to address his substance abuse issues, and failure to accept responsibility for the crimes of which he was convicted reasonably relate to whether resentencing him would pose an unreasonable risk of danger to public safety. The trial court did not abuse its discretion in denying defendant's section 1170.126 petition.

### DISPOSITION

The order denying resentencing is affirmed.


                                                           /S/
                                                   Mauro, J.



We concur:



        /S/
Butz, Acting P. J.



        /S/
Duarte, J.


17